James vs. Meyer.

No. 10,287.

### S. L. JAMES VS. ADOLPH MEYER.

The opening of a succession is an independent proceeding which ought to be docketed under a proper title and number and allotted as required by the Constitution in the Parish of Orleans.

Irregularities in such particulars cannot be claimed to have been acquiesced in by minors or their legal representative.

A father cannot abdicate the tutorship of his children although he be a non-resident tutor, where the intests of his minors in this State are involved in judicial proceedings and he is present in the State.

The appointment of a stranger as dative tutor to such minors. notwithstanding the recommendation of a family meeting, is an absolute nullity.

Under the Act of 1843, R. S. 3838. guardians residing out of the State, but within the United States, have a right to represent the interest of their wards in this State.

An illegally appointed tutor cannot represent the minors in proceedings to effect a partition at private sale.

The property owned by minors. in common with others who are not co-heirs, can be sold to effect a partition at private sale under the Act of 1878, amending and re-enacting that of 1869, only where the minors are properly represented by their tutor or tutrix, and on the authority of the court given on the recommendation of a family meeting duly convened.

Where a tutor owns property in common with his minors, which he wishes to partition, the appointment of special tutors, or of a special tutor, is necessary, where there exist opposite interests in the partition. The under tutor may represent the minors eventually in such a case.

James vs. Meyer.

The ownership of minors cannot be divested unless all the forms of law have been observed and, in cases of sale, unless the price was paid to one who had capacity to receive it and to grant discharge therefor.

Although, as a rule, purchasers at judicial sales are not required to look beyond the decree of sale, still they are bound, at their risk and peril, to ascertain that the court ordering the sale had jurisdiction over the matter, and that it had the right to exercise its discretion in the manner it did.

One who has agreed to purchase real estate cannot be forced to accept a title which is not unquestionably good and which is suggestive of litigation, the less so where the parties who may have rights are not parties to the suit, and would not be concluded by a judgment adverse to their ostensible or contingent rights.

This is so, more particularly in cases in which minors are concerned.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor*, J.

---

*Bayne, Denegre & Bayne and Alfred Goldthwaite*, for Plaintiff and Appellee.

---

*Farrar, Jonas & Kruttschnitt*, for Defendant and Appellant.

---

The opinion of the Court was delivered by

BERMUDEZ, C. J. The object of this suit is to force the defendant to accept the title tendered him to certain real estate which he had agreed to purchase.

His resistance is to the effect that the title offered is not good and valid, and such as he can be compelled to take.

From an adverse judgment the defendant appeals.

It appears that James, the plaintiff, acquired the property in question in execution of a judgment compelling him to accept the title tendered him to the same, and from which no appeal was taken.

The record shows that J. M. Lewis married twice, his first dying wife leaving one child and the second dying, leaving four children.

During the community between him and the second wife he acquired the property in question.

He opened the succession of his first wife and mortgaged his half of the property to secure the rights of his child by his marriage with her.

After his second marriage he had removed to Alabama, where his second wife lived and where he was appointed guardian of their minor issue.

Subsequently, averring that appointment and the interest of his children by the second marriage in the property, he instituted proceedings

in the Civil District Court for the Parish of Orleans for the convocation of family meeting on behalf of those children having in view the sale of the property at private sale, to effect a partition. The family meeting advised the sale, the proceedings were homologated and the sale ordered.

S. L. James having agreed to buy the property, but refusing the title tendered, Lewis brought suit against him before the same court.

Finding that the title tendered was not such as James was bound to accept, but thinking that it could be perfected, the District Court ordered that Lewis proceed to do what it thought should be done to accomplish that purpose, authorizing James to retain the amount due the child by the first marriage and which was secured on Lewis' half of the property.

Lewis then, by proceedings had in the suit against James to compel him to accept the title, procured on the recommendation of a family meeting, on behalf of his children by the second marriage, the appointment of one Girdner, a stranger, as dative tutor to those children.

An inventory was then taken and afterwards a family meeting was convened to have the share of the minors in the property sold at private sale to effect a partition. Its deliberations were homologated and the sale ordered.

Then, Lewis, joined by Girdner, filed a supplemental petition in the suit, alleging that the title had been perfected, asking that James be cited and after due proceedings condemned to accept the title.

James denied the validity of the title, averring that the proceedings under which Girdner had been appointed tutor were and are irregular, illegal and void for reasons stated.

Judgment was then rendered condemning James to accept the title, which he did, complying with the terms and conditions agreed upon.

It appears that James subsequently offered to sell the property to Meyer, who agreed to buy it; but Meyer, considering that the title offered was not good and not such as he was bound to receive, declined to accept it. Hence the present action against him to compel specific performance.

From an adverse judgment Meyer now appeals as already stated.

His defence is, that all of the proceedings of every kind and nature had in the cause of Lewis vs. James, relative to the succession of the second wife, the taking of an inventory, the appointment of a tutor, the calling of a family meeting are absolutely and radically null and of no effect, and have not divested the interest of the minors in said property and, therefore, the title tendered by James is not such as he can be lawfully compelled to take.

In support of that defence it is urged:

1. That the succession of the second Mrs. Lewis ought to have been regularly opened and allotted, and that this was not done.

2. That the appointment of Girdner as tutor of the minors of the second marriage is absolutely null.

3. That the court had no power to convoke family meetings to advise with reference to the property of those minors who were non-residents.

It was surely quite irregular not to have opened the succession of the second Mrs. Lewis as had been that of the first, and as is usually done.

The opening of a succession is a new and independent proceeding which ought to be instituted clearly and unmistakably under a proper docketing by title and number.

When thus opened, the matter ought to be allotted, as the Constitution requires, to one of the divisions of the Civil District Court for the Parish of Orleans.

However much the failure of an allottment may be deemed waived or ratified by parties who are capable of acquiescing in and assenting to, an irregularity of that kind, it cannot be successfully claimed, as a rule, that a tutor, or an under tutor, or minors who have no right to waive, have ratified the same.

Such opening of the succession of Mrs. Annie Lewis did not take place. The proceedings had touching her estate were carried on under the cover of the title of the suit of Lewis vs. James to compel the latter to comply with his promise to buy.

This was not meeting the requirements of the law.

But, conceding that those proceedings are regular, or that the succession was opened, as it ought to have been, it is manifest that the appointment of Girdner as dative tutor to the minors is an absolute nullity on its face, for the plain reason that the father of the minors, who had been appointed their guardian in Alabama, was living and in this State at the time; that he could not abdicate the tutorship of his minor children even temporarily and permit a stranger to be appointed as their tutor to represent them in this State. R. C. C. 301, 253.

Under the provision of Act No. 145, p. 47, of 1843, relative to guardians of minors residing out of this State, but within the United States, he had a right to represent them in this State, occupying to some extent the same position as if he had not been a non-resident guardian. R. S. 3838.

As co-owner for one half of the property with his minors to whom the other half belonged, he had a right to have the property partitioned by sale, if not susceptible of a convenient division in kind, and to institute proceedings for that purpose contradictorily with a special tutor or the

under tutor, if there existed any opposed interests in the partition. R. C. C. 1369; 9 Ann. 560; 15 Ann. 394; 23 Ann. 386, 763; 24 Ann. 175.

The Act of 1878, No. 25, p. 47, which amends and re-enacts Act 134 of 1869, p. 207, repealing all conflicting legislation, authorizes the partition of property owned by minors and others, at *private* sale, only where the minors are duly represented by their tutor or tutrix, and where the authority of the court has been given on the previously obtained recommendation of a family duly convened.

As it is apparent that in the present instance, the minors were represented neither by their guardian nor by a special tutor, or special tutors, or under tutor, it follows that by the proceedings had their title to one-half of the property was not divested and, therefore, did not pass to James.

It may be worthy of notice, that although it is alleged that James complied with the judgment exacting specific performance, there is no proof in the record that the price paid by James was received by one who had authority to accept it and to grant a discharge.   35 Ann. 377.

The doctrine is surely well established that a purchaser at a judicial sale need not look beyond the order of sale as a rule; but the protection is extended only where the court had jurisdiction of the subject-matter and exercised powers vested in it by law.

A probate court undoubtedly has jurisdiction over the persons and property of minors, but it could not exercise validly its powers to sanction the disposal of such property by one having no authority to represent the minors and to receive the price in case of sale.

In such cases, the purchaser is bound, at his risk and peril, to look behind the order of sale to ascertain whether the power exercised was one which could have been legally exercised.   Succession of Dumestre, 40 Ann. 571.

It is, therefore, apparent that, as James never acquired title to the half belonging to the minors, he could not convey any to Meyer, who had a right to exact a good and unquestionable title, conferring undoubted ownership in him, and who cannot be forced to accept one which is, to say the least, most doubtful and clouded and under which future litigation would be imminent.   He would be giving his money for property not transferrable to him and practically buying a law suit.   35 Ann. 570; 40 Ann. 847.

It becomes unnecessary to consider the last objection touching the power of the court in any case to convoke a family meeting in behalf of non-resident minors.

No judgment against defendant would bind the minors who are not parties.

It is, therefore, ordered and decreed that the judgment appealed from be reversed, and that there now be judgment in favor of the defendant, rejecting plaintiff's demand with costs in both courts.

FENNER, J.   Both parties, plaintiff and defendant, in this case, agree to the granting of a rehearing in this case, in order that certain additional facts may be embodied in the record, which they offer in the form of admissions, and ask us, on rehearing, to consider said admissions as part of the record and to render a new decision on the case as thus made up, or, if such cannot be done, to set aside our former decree and remand the case in order that opportunity may be given to take testimony as to such additional facts.

This court does not take testimony, nor does it consider cases made up by admissions of facts not presented in the court of first instance, whose judgment is brought up for review.   This would·be an exercise of original jurisdiction.

But considering the consent of parties as above stated a rehearing is now granted; and ·acting thereon, it is now ordered that our former decree be annulled and set aside, except in so far as it reversed the judgment appealed from, and that the case be remanded to the lower court to be there tried anew and proceeded with according to law, appellee to pay costs of this appeal.

