# McCAFFREY v. LITTLE.

### Judicial Sales; Marketable Titles; Wills.

1. The purchaser at a judicial sale will not ordinarily be compelled
   in equity to accept a doubtful title which may expose him to
   the hazard of further litigation with parties not before the court.
2. While the purchaser at such a sale will not be relieved of his
   purchase because there may be remote danger founded on objec-
   tions to the title of the trustees apparently trivial, it is not
   necessary that the danger shall be apparent and imminent;
   *following* Trust Co. v. Muse, 4 App. D. C. 12.
3. Such a purchaser will not be required to complete his purchase
   where the question of the validity of the trustees' title depends
   upon the construction of an inartificial instrument, although in
   the opinion of the court their title may be valid, if there be
   a reasonable ground of probability that another court might
   give a different construction to the instrument.
4. Whether a devise of land to a son without words of limitation is
   enlarged to a fee simple by the fact that another clause devising
   another parcel of land to the testator's daughter also gives her
   his personal property, while in another sentence she is required
   to pay the testator's funeral expenses and other debts and to
   care for his cemetery lot, raises a question sufficiently doubtful to
   relieve a purchaser at a judicial sale by trustees in a suit for par-
   tition by the devisees of the son, of his purchase, especially where,
   if required to take the title, he might become involved in future
   litigation with persons not before the court.
5. The purchaser at a judicial sale will not be relieved of his purchase
   because of the pendency of a creditor's bill against a former
   owner of the property to subject the land involved to the pay-
   ment of his debts, where such debts are much less in the aggregate
   than the amount of the purchaser's bid, as complete protection

of all concerned may be readily provided for without affecting the title of the purchaser.

6. Where the validity of the title of trustees to make sale in a partition suit rests upon a will, the probate of which is not conclusive upon the minor heirs of the testator, who have a statutory right after attaining their majority to contest the validity of the will, and it appears that the will is formal and regular upon its face, that it has been properly executed, and there is nothing to suggest any ground upon which it might be assailed, a purchaser at a sale by the trustees will not be relieved of his purchase merely because of the possibility of such minor heirs subsequently attacking the will.

No. 1192. Submitted April 10, 1902. Decided May 8, 1902.

HEARING on an appeal by the complainants and defendants in a suit for partition, from a decree of the Supreme Court of the District of Columbia, releasing a purchaser at a sale made by the trustees from compliance with his bid.

*Affirmed.*

The COURT in the opinion stated the case as follows:

This is an appeal from a decree releasing a purchaser at a judicial sale from compliance with his bid, because of the doubtful nature of the title to be conveyed.

On October 11, 1901, the Supreme Court of the District, sitting in the special equity term, decreed the sale of the premises herein involved for partition among the devisees of Frank T. McCaffrey, namely, William H. McCaffrey, James B. McCaffrey and Lizzie C. Manogue.

Henry F. Woodard, Orrin B. Hallam and Edwin Forrest were appointed trustees to sell at public sale and make title to the purchaser thereat. The proceedings were regular throughout, and at the sale in accordance therewith, the appellee Richard M. Little made a bid of $9,100 which, being the highest, was accepted, and he deposited with the trustees the sum of $200 pending the completion of the title.

Before confirmation, the said Little filed a petition in the cause asking release from his offer of purchase and the return of his deposit. He alleged that the title was defective,

and had been so declared by the Columbia Title Company, which had been employed by him to examine and report upon the same.

The question of title arose on the construction of the will of Hugh McCaffrey, deceased, which devised the lot of land to the said Francis T. McCaffrey.

The trustees answered the petition and insisted upon performance.

They recited, first, the will of said Hugh McCaffrey, the important items of which read as follows:

"I give and bequeath to my daughter Mary A. Quigley house number 301 at southwest corner of 11th and C streets southeast, being in lot number 5, in square 970, with the store and dwelling, stock and fixtures, and lot on which it stands, also houses numbers 13 and 15 6th street southeast with lots on which they stand, being parts of lots 19 and 20 in square number 841, also any money in bank to my account at the time of my death, also any money, due to me, also any building association stock. She is to pay funeral expenses and any other legal debts I may owe, also to care for my lot in Mount Olivet cemetery.

"I give and bequeath to my son, James B. McCaffrey, house number six hundred and two (602) East Capitol street and lot on which it stands, being in lot number ten (10) in square number eight hundred and sixty-eight (868).

"To my son, William H. McCaffrey, I give and bequeath house 604 East Capitol street, being in lot number ten (10), in square number eight hundred and sixty-eight (868) and lot on which it stands.

"To my daughter, Lizzie Manogue, I give and bequeath house number fourteen hundred and twenty-three (1423) Corcoran street N. W., and lot on which it stands, being lot number fifty-four (54) in square number two hundred and eight (208).

"2. To my son, Francis T. McCaffrey, I give and bequeath house five hundred and nineteen (519) East Capitol street, and lot on which it stands, being part of lot number twenty

(20) in square eight hundred and forty-one (841), also my horse and buggy.

"And to my grandson, Frank Foley, I give and bequeath house number one hundred and twenty-one (121) Eleventh street, S. E., being in lot number fourteen (14), square number nine hundred and sixty-eight (968), and lot on which it stands.

" To my grandson Joseph Quigley, I give and bequeath my watch and chain."

This will was made April 30, 1896, and was followed soon thereafter by the death of the testator. It contains no residuary devise or bequest.

The next recital is as follows:

" 3. That said Hugh McCaffrey left surviving him the following heirs at law, namely, his children, James B. McCaffrey, William H. McCaffrey, Francis T. McCaffrey, Lizzie Manogue, and Mary A. Quigley, and Frank Foley, a son of a deceased daughter, Catharine Foley; that all of said children are living, except the said Mary A. Quigley and Francis T. McCaffrey; that said grandson, Frank Foley, is still living and is an infant under the age of 21 years; that said Mary A. Quigley died July 16th, 1897, leaving surviving her a husband, Edward Quigley, who is living, and four children, namely, Catherine L. Quigley, Margaret Quigley, Mary Quigley, and Joseph Quigley, all of whom are living, and the last named two of whom are infants under the age of 21 years; that said Francis T. McCaffrey died October 20, 1898, testate and unmarried; that the last will and testament of said Francis T. McCaffrey, which has been duly admitted to probate and record as a will of real and personal estate, devised his entire estate, after the payment of his debts, to his two brothers, the said William H. McCaffrey and James B. McCaffrey, and to his said sister, the said Lizzie C. Manogue; that the said last-named testator left as his heirs at law and next of kin, besides his brother and sister, the said William H. McCaffrey, James B. McCaffrey, and Lizzie C. Manogue, the said children of his

deceased sister, Mary A. Quigley, namely, Catherine L. Quigley, Margaret Quigley, Mary Quigley, and Joseph Quigley, the two last named of whom are infants under the age of 21 years, and the said Frank Foley, an infant as aforesaid, who is the son of a deceased sister, Catherine Foley."

Upon the pleadings and exhibits, the latter including the report of the Columbia Title Company, the court granted the prayer of the petitioner and directed the return of the deposit. From this decree the appeal has been prosecuted.

*Mr. A. A. Birney, Mr. O. B. Hallam,* and *Mr. H. F. Woodard* for the appellants:

That Mrs. Quigley took a fee simple cannot be doubted for a moment. It has been long established that a condition or direction imposed on a devisee enlarges a devise without words of limitation to an estate in fee simple. The ground upon which this rule of construction has been established, is that, unless the devisee were to take a fee, he might in the event be a loser by the devise, since he might die before he had reimbursed himself the amount of the charge; and it applies, therefore, to every case in which a loss is possible. 3 Powell on Devises, by Jarman, p. 379; *Lithgur* v. *Kavenagh,* 9 Mass. 161; *Farrar* v. *Ayres,* 5 Pick. 404. And it is also established that where from the fact of such condition in one of several devises, it is manifest the testator intended to pass a fee in such devise, the fact that in the others he has used similar terms (although without attaching conditions), will, in the absence of words of contrary import, establish a like intent in those other devises, and the beneficiaries will take in fee. The precise point was passed upon in *Cook et al.* v. *Holmes,* 11 Mass. 529 (decided in 1814); *Butler* v. *Butler,* 2 Mackey, 96, 104.

*Mr. Charles Cowles Tucker* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

The principle is well established in equity that a pur-chaser, under ordinary conditions, will not be compelled to accept a title not free from reasonable doubt, and which might, therefore, within the range of reasonable probability, expose him to the hazards of future litigation with parties not before the court and whose rights are incapable of conclusion by its decree.

It is not sufficient to defeat performance that there may be remote danger founded on objections apparently trivial; but, on the other hand, it is not necessary that the danger shall be apparent and imminent. *Trust Co.* v. *Muse,* 4 App. D. C. 12, 23, 24, and cases cited; Adams Eq. 84; 3 Pom. Eq. Jur., Sec. 1405; 22 Am. & Eng. Encyc. of Law, 948; *James* v. *Meyer,* 41 La. Ann. 1100, 1104.

Where the question depends upon the construction of an inartificial instrument, a mere opinion in favor of the validity of the title would not be sufficient, if there be any reasonable ground of probability that another court might give a different construction. Under such conditions, it would be inequitable to compel the purchaser to assume the risk of litigation that may not unreasonably be apprehended to follow. Fry Sp. Per., Secs. 870, 871; *Butts* v. *Andrews,* 136 Mass. 221, 222; *Cunningham* v. *Blake,* 121 Mass. 333, 336.

It remains now to apply the foregoing doctrine to the facts of the case at bar.

The important point of objection to the title, upon which the appellee relies, is, that the devise of the land by the terms of the will of Hugh McCaffrey created a life estate only in Francis T. McCaffrey.

Considering the particular clause by itself, this is undoubtedly true under the law at that time, because there are no words of limitation whatever to be found in it. *Mc-Aleer* v. *Schneider,* 2 App. D. C. 461, 467.

It was said, however, in that case that: "At the same time, to enlarge the estate into a fee does not require the use

of technical terms or any particular form of words. Any words which will sufficiently show the intention of the testator to create more than a life estate will be given that effect, no matter what their form may be; and the whole will may be looked into in order to ascertain the meaning to be given to this particular part. It is true also that partial intestacy is not favored; but this is a rule of construction only which must yield to the superior rule of law."

Invoking the rule that the intent of the testator may be gathered from all parts of the will in aid of the construction of a particular clause, counsel for the appellants invite attention to the first item which contains the devise to Mary A. Quigley. She is given certain specified lots with the improvements thereon, among them one "with the store and dwelling, stock and fixtures;" and the item concludes as follows, " also any money in bank to my account at the time of my death, also any money due to me, also any building association stock. She is also to pay funeral expenses and any other legal debts I may owe, also to care for my lot in Mount Olivet cemetery."

The contention is that the charge of funeral expenses and debts had the legal effect not only to enlarge to a fee simple the devise to Mary A. Quigley, which was without words of limitation, but likewise also to enlarge the uncharged devise to Francis T. McCaffrey.

It may be added, too, that the title company, in stating its objections to the title of the devisees of Francis T. McCaffrey, also suggested that this charge might have that effect.

There is authority for the proposition, in a decided case relied on by the appellants, that where land has been devised without words of limitation, but specially charged with the payment of debts and legacies, the effect is to enlarge the estate to a fee simple. *Cook* v. *Holmes,* 11 Mass. 528, 532.

Other authorities, however, cited in a reporter's note to that case in one of the editions of the Massachusetts reports, seem to establish a distinction between a special charge upon the land devised without words of limitation, and the requirement of payment by the devisee as a condition of the devise,

and hold that in the first instance there is no enlargement of the estate because the charge follows the land into whatever hands it may pass.

Whether the charge in this case is both upon the devisee and the land, or whether the distinction above mentioned is a well founded one, we need not determine, for if the appellants' contention were conceded there would yet remain an element of some doubt. As we have seen, the clause of the will relating to Mary A. Quigley contains a bequest of certain items of personal property, the value of which does not appear. The requirement of the payment of funeral expenses and other debts by her is contained in a separate sentence with which the clause concludes.

The appellee's contention that the required payment is to be construed as a charge upon, or a condition of, the bequest of the personal property, and as having no relation to the real estate, is, at least, a plausible one in the absence of any direct authority gainsaying it.

In what has been said we are not to be understood as expressing the opinion that Francis T. McCaffrey did not take an estate in fee simple under the will of Hugh Mc-Caffrey. On the contrary, it is probable that such was the intention of his devisor.

All that we decide is that the question is not free from doubt, the title is not so clear, that the appellee ought to be compelled to accept it and assume the hazard of future litigation with persons not now before the court. .

Another objection to the title is founded on a pending bill by certain creditors of Francis T. McCaffrey to subject the land to the payment of debts, much less in the aggregate than the amount of appellee's bid.

This alone would not be sufficient because the complete protection of all concerned might readily be provided for without affecting the title of the purchaser.

Another and final objection is thus stated in the report of the title company: " The probate of the will of Frank T. McCaffrey is not conclusive upon his minor heirs, and a sale

or conveyance made by said trustees of said premises will
be subject to the rights of said minor heirs to contest the
validity of said will."

This is true, but the will is formal and regular upon its
face, and has been executed in accordance with the require-
ments of the law.   There is nothing in the record indicating
the slightest suspicion of its validity for any cause, or sug-
gesting any ground upon which it might probably be assailed.

The contingency of subsequent contest inheres in every
case of probate where the testator may have died leaving
minors among his heirs at law, and to permit it to be raised
as a substantial objection to the specific enforcement of con-
tracts of purchase, in the absence of any circumstance tend-
ing to excite belief, or even suspicion, of probable grounds,
would create a serious restraint upon alienation.

In the absence of such circumstances the objection would
seem a trivial one that ought not to arrest performance.

For the reasons given, the decree will be affirmed with
costs.   It is so ordered.                          *Affirmed.*