For reasons assigned, the judgment appealed from is affirmed.

See dissenting opinion of PROVOSTY, J., 36 South. 484.

---

(36 South. 486.)

No. 14,715.

GETMAN v. HARRISON.*

(Jan. 18, 1904.)

JUDICIAL SALE—DEFECTIVE TITLE—TAXES—ESTOPPEL.

1. If a title to real estate tendered to an adjudicatee at sheriff's sale is suggestive of serious litigation, he ought not to be compelled to accept it; but whether that be so, or not, is a question which is to be determined by the court after the points upon which the supposed suggestion is founded have been considered.

2. Where city lots have been purchased according to a particular description, and, after having been so held for 40 years, are so sold, and a title is tendered, thus describing them, the fact that the adjudicatee, relying only upon a description found in an antecedent title, sets up a discrepancy of a few inches in the measurement, will not justify the assumption that the later description is erroneous.

3. The fact that an apparent title, by convention or tax sale, of property belonging to living persons, which is allowed to remain unchallenged upon the public records, is invalid, does not affect the validity of an assessment predicated thereon.

4. Where, by the acquiescence or consent of the real owner, the apparent title to immovable property is vested in another, such real owner can claim nothing to the prejudice of innocent third persons who have acquired rights with respect to said property on the faith of such apparent title.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; John St. Paul, Judge.

Action by Mary C. Getman against Mary L. Harrison. Judgment for plaintiff. The adjudicatee, D. B. H. Chaffe, defendant in rule on seizure and sale, appeals. Affirmed.

F. Rivers Richardson, for D. B. H. Chaffe, appellant. John Taylor Whitaker and Ernest T. Florance, for appellee.

---

*Rehearing denied April 27, 1904.

Statement of the Case.

MONROE, J. This matter comes before this court by appeal from a judgment making absolute a rule to accept title to certain real estate in this city, which was adjudicated under a writ of seizure and sale issued in the above-entitled proceeding. The history of the title is as follows: In 1860 the property was sold by Warner & Massicot to Delauny & Rice, and in 1862 was sold by the sheriff, in a proceeding entitled, "John G. Rice v. His Creditors and the Creditors of Delauny & Rice," to B. S. Harrison, who in 1867 executed a notarial act purporting to sell it to his wife, Mrs. Mary L. Harrison, in whose name it was thereafter assessed, until 1886, when it was sold, under Act No. 82, p. 104, of 1884, for taxes due prior to December 31, 1879, to L. E. Lemarie.

In 1888 Lemarie sold it to Lee Sidney Harrison, son of Mr. and Mrs. B. S. Harrison; and in 1889, by an act to which they and their major or emancipated children, Lee Sidney, De Fuentes, Ruth, Archibald, and Anna Lavinia, were parties, it was mortgaged to secure $1,200 borrowed by Mrs. Harrison from Napoleon Underwood.

In July, 1889, B. S. Harrison died, and in August following the property was sold by Lee Sidney Harrison to his mother.

In October, 1891, by an act to which her children last above named were parties, she mortgaged it to secure $2,000 borrowed by her from Wm. Beattie.

There appear to have been other mortgages in the meanwhile, but the next that we find in the record is that of February, 1899, to which Mrs. Harrison and her children Mary (then Mrs. Delery), De Fuentes, Lee Sidney, Ruth, George, and Benjamin were parties, and which was given to secure the note of $4,000, in satisfaction of which the property was adjudicated to the appellant now before the court. It is proper to remark here that the property appears to have been adjudicated by B. F. Joubert, tax

collector, to B. F. Flanders, receiver and liquidator of the Consolidated Association of the Planters of Louisiana, for the state taxes from 1865 to 1875, and in 1877 the State Auditor made a title in conformity to such adjudication, of which, however, nothing further appears.

B. S. Harrison was twice married. His first wife died in 1859, leaving two children, both of whom died unmarried and intestate —the one, in 1871; the other, in 1895. By the second marriage, in which he was separate in property from his wife, by contract, there were nine children, seven of whom, to wit, Ruth, Lee Sidney, De Fuentes, Archibald, Anna Lavinia (afterwards Mrs. Reiss), Benjamin, and George, participated, as persons sui juris, in the execution of one or the other of the acts of mortgage whereby the title of their mother to the property in question was recognized. Mary B. Harrison (then Mrs. Delery) participated in the mortgage of February, 1899, though she was not authorized by her husband. Eunice Harrison (Mrs. Rivet) does not appear to have participated in any of the acts which have been filed in evidence. It is shown that the Harrison family occupied the property as their home certainly before the tax sale to Lemarie, and possibly as far back as they owned it, and that Mrs. Harrison and those of her children who have remained unmarried have so occupied it uninterruptedly ever since. Mrs. Rivet married and moved out in 1893: Mrs. Reiss, in 1897; Mrs. Delery, in 1899; and Mrs. Reiss died in 1900, leaving two minor children. It is not shown that the taxes for the years from 1880 up to the date of Lemarie's purchase were paid by him, nor, upon the other hand, is it shown that any taxes for those years were or are unpaid. Evidence tendered for the purpose of showing that Lemarie and Lee Sidney Harrison held by simulated titles was excluded. In the adjudication to the defendant in rule, the description is the same as in the sale to

Harrison in 1862, and, according to that description, the property has 1 foot more of front on Esplanade and on Barracks streets, and about 19 inches more of depth on Dorgenois street and on the parallel side line, than appears from the description in the sale to Delauny & Rice in 1860, but whether the error is in the first description or the last is not shown. The objections which the defendant in rule urges to the title are (1) that it is not free from doubt as to its validity, but is suggestive of serious litigation; (2) that he cannot be compelled to accept the property unless he is tendered the entire amount advertised; (3) that the sale by Harrison to his wife was null, and that the property belonged to him at his death, and to his heirs after his death; (4) that the tax sale to Lemarie and the sale by Lemarie to L. S. Harrison were null, in that they constituted an attempt to transfer the property from Harrison to his wife. And there are one or two other objections which appear to have been abandoned. The plaintiff in rule pleads the prescription of three, five, and ten years against any attack upon the title, and avers that the heirs of B. S. Harrison are estopped to question its validity. The rule was made absolute, and the defendant in rule has appealed.

### Opinion.

If the title tendered to the defendant in rule is suggestive of serious litigation, he ought not to be compelled to accept it. James v. Meyer, 41 La. Ann. 1100, 7 South. 618; Mallard et al. v. Dejan, 45 La. Ann. 1277, 14 South. 238. But whether that be so or not is the question which is to be here determined after the points upon which the supposed suggestion is founded have been considered.

As to the description of the property, the evidence shows that the defendant in rule was tendered a sheriff's deed, which, in case of appeal, was to have been copied in the transcript. It has been, no doubt inadver-

tently, omitted, but we assume that in describing the property it conforms to the advertisement, as the advertisement conforms to the title under which the property was mortgaged; and the mere fact that there is a difference of a few inches between the description as thus given and that by which the property was sold upon one occasion more than 40 years ago does not justify the conclusion that the later description is erroneous.

Conceding that the sale from Harrison to his wife was null, nevertheless the title upon the public records was in the name of Mrs. Harrison, and the property was legally assessed in her name, and might legally have been sold, under Act No. 82, p. 104, of 1884, as her property. It is said, however, that the sale, as made, was illegal, (1) because Lemarie bought the property in pursuance of an understanding between Mr. and Mrs. Harrison and himself the more effectually to vest the title in Mrs. Harrison; and (2) because he did not comply with the requirements of Act No. 82, p. 104, of 1884, by paying the taxes due on the property for 1880 and the subsequent years, up to the date of the adjudication. The judge a quo properly rejected the testimony offered to prove the understanding referred to, for the reason that the plaintiff in rule, against whom it was offered, is a third person who has invested money in a mortgage upon the property upon the faith of the title as spread upon the public record, and she cannot be affected by any private understanding between persons (one or the other of whom certainly owned the property) to which she was not a party, and proof of which would tend to affect the validity of the title relied on by her, or shift it elsewhere than as appears from such record. As to the taxes for 1880 and subsequent years, it is not shown that they were paid, it is true, but neither is it shown that they were or are unpaid; and, in the absence of affirmative evidence, the presumption is that Lemarie and the tax collector complied with the law. But let us suppose that Lemarie bought the property at the instance of Mr. and Mrs. Harrison, with the understanding that, by retransferring it to, the title was to be securely vested in, Mrs. Harrison, and that Mr. or Mrs. Harrison furnished the cash, which the tax deed shows was paid; and let us suppose that Lemarie acquired no title at the tax sale. In other words, let it be conceded, for the sake of argument, that the real title remained in B. H. Harrison, whilst the ostensible title was vested in Mrs. Harrison. What then? B. S. Harrison not only participated in an arrangement by which Mrs. Harrison was held out as the owner of the property, but he thereafter became a party to an act whereby she mortgaged it, as her property, to secure a loan of money, obtained from an innocent third person, as against whom, therefore, neither he nor his heirs could be heard to deny the validity of her title. And after his death, nine of his ten heirs, including Mrs. Reiss (the mother of the only minors who are said to be interested), participated in similar acts; and the tenth and only other heir (Mrs. Rivet) remained silent, knowing that such acts were being executed. In fact, it is shown that Mrs. Reiss, who had signed other acts of a similar character, and Mrs. Rivet were specifically informed of the preparation and existence of the act under which the property was adjudicated in this case, and were requested to sign it; and, though they did not sign it, their failure in that respect may have been negligence, as it is not shown that they refused to do so. Under these circumstances, it seems to us that the heirs of B. S. Harrison can claim nothing to the prejudice of the plaintiff's mortgage, or of the sale thereunder, and it is not urged that any one else can make such claim. The judgment appealed from is therefore affirmed.