## ILLINOIS CENT. R. CO. v. BROOKS-SCANLON CO. et al.

(Circuit Court of Appeals, Fifth Circuit.   April 11, 1917.)

No. 2951.

1. CARRIERS ☞171—RATES—ESTABLISHMENT.
    It is permissible for a railroad company having a trunk line to enter into an agreement with a railroad company, whose line was a tap line or tributary to its trunk line, establishing through routes and joint rates as to property transported over both the tap line and the trunk line, applicable to logs or lumber, belonging to the trunk line company, and it was contemplated that the logs should be manufactured into lumber after being received by that company.

    [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 735-739.]

2. SALES ☞77(2)—CONTRACTS—CONSTRUCTION—EXPENSE OF TRANSPORTATION.
    Plaintiff, which operated a trunk line railroad, entered into a contract with another company, operating a tap line railroad, whereby the tap line company should receive part of the freight rate paid on lumber manufactured from logs brought over the tap line and transported by plaintiff into a designated territory. Plaintiff entered into a contract for the purchase of lumber from defendant, whose mill was situated at the point of intersection of the trunk line and the tap line. Logs out of which lumber was manufactured were hauled over the tap line, and plaintiff, on carrying such lumber into the designated territory, made the required payment to the tap line company, which amounts were in turn paid to defendant. Defendant sold the lumber f. o. b. at the intersection point. *Held* that, though plaintiff, by reason of the diversity of its business and multiplicity of departments, did not immediately discover the situation, it was, defendant having agreed to deliver the lumber f. o. b. at the intersection point, entitled to repayment of the sums paid the tap line company, for otherwise defendant would escape payment of a large portion of the freight on the logs to the point of intersection.

    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 210, 212.]

In Error to the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Action by the Illinois Central Railroad Company against the Brooks-Scanlon Company and another. There was a judgment for defendants, and plaintiff brings error. Reversed.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

R. V. Fletcher, of Chicago, Ill., and Hunter C. Leake and Gustave Lemle, both of New Orleans, La., for plaintiff in error.

Robert R. Reid, of Amite, La., and Wm. E. Lamb, of Chicago, Ill., for defendants in error.

Before PARDEE, WALKER, and BATTS, Circuit Judges.

WALKER, Circuit Judge. The plaintiff in error, the Illinois Central Railroad Company (which will be called the plaintiff), made a number of purchases of lumber from the Brooks-Scanlon Company, one of the defendants in error, which was a manufacturer of lumber, having its mill at Kentwood, La. Each of the contracts was made by the Brooks-Scanlon Company accepting a written order of the plaintiff for described lumber at designated prices. Each of these orders bore on its face one of the following notations: "f. o. b.;" "f. o. b. cars;" "f. o. b. cars Illinois Central tracks, Kentwood." The plaintiff brought this suit against the Brooks-Scanlon Company and the other defendant in error, the Kentwood & Eastern Railway Company, the line of railway of which company connects with the plaintiff's line at Kentwood, to recover the amount paid by the plaintiff to the last-named company pursuant to an agreement between it and the plaintiff (which agreement was shown in the joint traffic tariff rates filed by the plaintiff with the Interstate Commerce Commission), that on all lumber manufactured from logs brought over the rails of the Kentwood & Eastern Railway Company to Kentwood, La., and there manufactured into lumber and shipped, whether to the plaintiff itself or to another consignee, from Kentwood over plaintiff's rails to points in designated territory, called Central territory, on and north of the Ohio river and east of the Mississippi river, the plaintiff would allow to the Kentwood & Eastern Railway Company a division of the freight rate, amounting to 2½ cents per hundred pounds. At the conclusion of the plaintiff's evidence the court directed a verdict in favor of the defendants. The plaintiff excepted to this ruling, and assigns it as error.

The evidence adduced tends to prove the following facts in addition to those above stated: The lumber sold and delivered to the plaintiff was manufactured by the Brooks-Scanlon Company at its mill at Kentwood from logs brought to Kentwood over the Kentwood & Eastern Company's line. At the time of the receipt of logs so shipped to it the Brooks-Scanlon Company paid to the Kentwood & Eastern Company the latter's local freight rates from the points of origin of the logs on its line to Kentwood. When lumber manufactured from logs so carried by the Kentwood & Eastern Company moved over the plaintiff's line from Kentwood to points in the territory on and north of the Ohio river designated in the above-mentioned agreement for a division of the joint through freight rate the plaintiff paid to the Kentwood & Eastern Company the part of the joint rate which under that agreement the latter company was entitled to receive. That company in turn paid to the Brooks-Scanlon Company the amounts so paid to the former by the plaintiff. A result was that, unless the local freight rate to Kentwood on the logs amounted to more than the part of the through joint rate which the Kentwood & Eastern Company receiv-

ed from the plaintiff and paid to the Brooks-Scanlon Company, the latter company was not out anything for the carriage of the logs to Kentwood, except the use of the money paid as local freight for the time elapsing between the date of such payment and the date of the receipt from the Kentwood & Eastern Company of the amount paid to it by the plaintiff pursuant to the above-mentioned agreement for a division of the through rate. For a considerable time the plaintiff paid the Brooks-Scanlon Company the stipulated prices for lumber bought from it and shipped into Central territory, and paid the Kentwood & Eastern Company the amounts due to it under the agreement for a division of the rates on such shipments into that territory, without raising any question as to the liability of the Brooks-Scanlon Company for the amounts so paid to the Kentwood & Eastern Company. This was accounted for by the fact that the officials of the plaintiff's purchasing department, through which the plaintiff's purchases of lumber were made and settled for, were not aware of the fact that the lumber bought by the plaintiff at Kentwood and shipped from that point to other points on the plaintiff's lines was in any event subject to a charge for the hauling by another carrier of the lumber itself or the logs from which it was manufactured from the point of its origin to Kentwood. They knew of the above-mentioned agreement for a division of through rates, but did not know that that agreement was applicable to lumber purchased and made deliverable at Kentwood and shipped by the seller from that point, and not from a point on another carrier's line.

This ignorance on the part of those officials was due to the method followed in that department in ascertaining if the seller of goods, who was obligated to make delivery f. o. b. at a point on the plaintiff's lines, was chargeable for the amount due to another carrier or carriers for bringing the goods to the stipulated point of delivery on the plaintiff's line, and also to the circumstance that another department of the plaintiff, its traffic department, conducted by other officials, had charge of the matter of ascertaining and paying what was due to the Kentwood & Eastern Company on a division of the rates on lumber shipped into Central territory. It was the practice of the officials of the purchasing department to look to the waybill, which accompanied the shipment of goods purchased, to ascertain if anything was due to another carrier for hauling the goods from their place of origin. If the goods had come over the line of another carrier, the plaintiff's agent at the point of delivery on its line made a notation on the waybill which showed the fact that the other carrier was entitled to its charge for hauling the goods before their delivery to the plaintiff. No such notation was made by the plaintiff's agent at Kentwood on waybills showing shipments by the Brooks-Scanlon Company of lumber sold by it to the plaintiff, as that lumber was not received from another carrier, but from a shipper at Kentwood. As to lumber so shipped from Kentwood, the matter of the division for hauling to that point the logs used in the manufacture of the lumber was one with which the plaintiff's local agent at that point had nothing to do. As the waybills accompanying such shipments did not indicate that any other carrier was interested in the shipment, the purchasing department paid for the lumber without

making any claim that the seller was liable for part of the freight charge on the lumber or the logs out of which it was manufactured. The plaintiff's traffic department had charge of the matter of ascertaining and settling what was due to the Kentwood & Eastern Company on shipments from Kentwood, whether to the plaintiff itself or to any other consignee in Central territory, of lumber manufactured from logs hauled by that company to that place. The traffic department obtained the information in reference to such shipments, and ascertained the amounts to be paid to the Kentwood & Eastern Company as its share of the joint rates, from sources other than the waybills which accompanied the shipments. When the representatives of the plaintiff, who, in its behalf, bought and paid for the lumber so shipped into Central territory, became aware of the fact which made the above-mentioned agreement for a division of rates applicable to the shipments in question, namely, that that lumber was manufactured from logs brought to Kentwood over the rails of the Kentwood & Eastern Company, they were not lacking in promptness in asserting the claim of the plaintiff that it was entitled to recover the amounts paid to the Kentwood & Eastern Company as its share on the division of the through rates.

[1] The Kentwood & Eastern Railway was a tap line, or railway tributary to the plaintiff's trunk line. Under the decision in the Tap Line Cases, 234 U. S. 1, 34 Sup. Ct. 741, 58 L. Ed. 1185, it was permissible to establish through routes and joint rates as to property transported over both the tap line and the trunk line to which it was tributary, though such property, if it was logs or lumber, belonged to one of the carriers. The arrangement under which the shipment of the logs to Kentwood and of the lumber there manufactured from them from that point over the plaintiff's lines was treated as a through shipment from the point where the logs were received by the Kentwood & Eastern Company to the point on the plaintiff's line where the lumber was finally delivered, and part of the through rate was paid by the plaintiff to the Kentwood & Eastern Company for hauling the logs to Kentwood, involved what is known as a milling in transit privilege. Central Yellow Pine Association v. V. S. & P. R. R. Co., 10 I. C. C. 193; The Tap Line Case, 23 I. C. C. 549.

[2] It is not questioned, and under the evidence adduced it is not open to question, that the terms "f. o. b.," "f. o. b. cars," "f. o. b. cars Illinois Central tracks, Kentwood," as used in the contracts of sale and purchase, obligated the seller to pay freight charges incurred for the shipment of the lumber, or the logs out of which it was manufactured, to the point at which the lumber bought was to be delivered to the plaintiff by the seller, the Brooks-Scanlon Company. The plaintiff was entitled to a delivery of the lumber on its line free of all charges. Sheffield Furnace Co. v. Hull Coal & Coke Co., 101 Ala. 446, 14 South. 672; United States v. Andrews, 207 U. S. 229, 28 Sup. Ct. 100, 52 L. Ed. 185. The contention in behalf of the defendants in error, as we understand it, is that this obligation was fully complied with by the Brooks-Scanlon Company paying to the Kentwood & Eastern Company the local freight charged for hauling to Kentwood the logs out of which the lumber was manufactured; that the lumber, when delivered

to the plaintiff at Kentwood, was not subject to any charge for hauling the logs to that point, and became subject to the payment of a charge for that service only as a result of the action of the plaintiff itself in having the lumber manufactured from the logs moved over its line from Kentwood, the agreed place of delivery by the seller, to a point in Central territory; and that the obligation which the seller had discharged by paying the local rate could not be revived by a dealing with the lumber in which it did not participate and for which it is not responsible. The suggestion is that, as the plaintiff was at liberty to refrain from carrying the lumber into Central territory, it alone must suffer whatever may be the consequences of its doing so. The contention involves the assumptions that the payment of the local rate for hauling logs to Kentwood was in any event a final settlement for that service, unconditionally extinguishing the claim of the carrier which rendered it, and that the obligation of the seller to deliver the lumber free of all charges incurred to accomplish the stipulated delivery was a conditional one, which was not to exist if the buyer exercised the right which its purchase conferred upon it of carrying the lumber it bought into Central territory.

We think that each of these assumptions is unwarranted. The payment of the local rate for hauling logs to Kentwood was not a final settlement of the claim of the carrier which rendered that service, if the logs so hauled, when converted into lumber at Kentwood, were shipped from that point over the plaintiff's rails into Central territory. The conversion of the logs into lumber at Kentwood, followed by the shipment from that point of such lumber over the plaintiff's lines into Central territory, had the effect of keeping alive the Kentwood & Eastern Company's claim for bringing the logs to Kentwood, and of imposing upon the plaintiff the obligation of paying the Kentwood & Eastern Company the compensation to which it was entitled for rendering that service. The payment by the plaintiff to the initial carrier of the latter's stipulated share of the through rate for the carriage of the commodity from its place of origin on its line to the place of final destination in Central territory was not made any the less a payment for bringing the logs to Kentwood by the fact that the Brooks-Scanlon Company conditionally paid the local rate on the logs before they were manufactured into lumber and their final destination was determined by the shipment of the lumber into Central territory. The result was that the plaintiff paid a charge for which the Brooks-Scanlon Company was bound to indemnify it under that company's obligation to deliver f. o. b. The terms of the contract were not such as to make the plaintiff's right to a delivery of the lumber free of all charges subject to the condition that it refrained from carrying it into Central territory. The contracts cannot properly be given the same meaning they would have had if they had contained the stipulation for deliveries at Kentwood "f. o. b., provided the lumber is not shipped into Central territory." By its purchases the plaintiff became entitled to the lumber unincumbered by any charge against it for a service rendered to the seller. It was entitled to carry it to any point it chose, and to have the lumber, whatever its destination was when it was delivered for shipment, free of

any charge for bringing it, or the logs out of which it was manufactured, to Kentwood. Its exercise of the right of doing what it pleased with its own property cannot have the effect of discharging the seller's obligation to deliver the lumber free of all charges.

At the times the plaintiff paid for the lumber it could properly have retained so much of the purchase price as was required to pay the initial carrier's share of the through rate, as that was the compensation due for a service which the seller was obligated to pay for. The seller of the lumber was not entitled to that part of the stipulated price which the buyer was required to pay to another carrier to free the lumber of a charge resting against it when it was delivered at Kentwood for shipment into Central territory. The payment to the Kentwood & Eastern Company was proper, as, under the agreement above-mentioned, it was entitled to its stipulated share of the through rate. The plaintiff's right to recover is a result of the fact that it had to pay the amounts sued for to free the lumber of claims to which it was subject, but for which the seller was bound under its agreement to deliver f. o. b. The right to recover is not dependent on the fact that the amounts the plaintiff paid to the initial carrier were by the latter paid to the seller of the lumber. But in view of that fact it is quite apparent that a denial of the plaintiff's right to recover would have the effect of enabling the seller of the lumber, at the expense of the buyer, to escape the payment of what it really cost to get the logs to Kentwood. The failure of the plaintiff's representatives to deduct from the agreed price of the lumber the amounts so paid to the initial carrier was due to ignorance on the part of those officials of the fact that another carrier had rendered a service which the seller of the lumber was obligated to pay for. It is not material whether what was so paid to such other carrier was the whole or only a part of the compensation due to it for carrying to Kentwood the logs from which the lumber was manufactured. The entire expense of carrying the logs to Kentwood had to be borne by the seller of the lumber.

The conclusion is that the evidence adduced showed that the plaintiff was entitled to recover from the Brooks-Scanlon Company the amounts paid by the plaintiff to the Kentwood & Eastern Company for carrying to Kentwood the logs out of which the lumber in question was manufactured. It follows that the court was in error in directing a verdict in favor of the Brooks-Scanlon Company.

Because of that error the judgment is reversed.