## BROOKS–SCANLON CO. v. ILLINOIS CENT. R. CO.

(Circuit Court of Appeals, Fifth Circuit. April 7, 1919.)

No. 3285.

1. SALES ⊜79—AMBIGUITY IN CONTRACT—UNDERSTANDING OF PARTIES.

Where the application of the facts to the expression "f. o. b.," used in a contract of sale, was a matter of doubt and controversy, it was a proper subject for an understanding between the parties, and, such an understanding having been reached, it was not in conflict with the effect of the letters, but merely defined the application of the expression.

2. SALES ⊜88—MEANING OF CONTRACT—QUESTION FOR JURY.

In a railroad's action to recover from the seller an excess, paid under a contract whereby lumber was purchased "f. o. b." its rails, issue as to the understanding of the parties regarding the meaning of the expression "f. o. b." *held* for the jury under the evidence.

3. SALES ⊜87(3)—CONSTRUCTION OF CONTRACT BY PARTIES—SUFFICIENCY OF EVIDENCE.

Evidence *held* to warrant jury in finding that letters "f. o. b." were accepted by both parties as referring alone to charges connected with handling and loading the sold lumber at shipping point, and as not having reference to charges conditional in character and the existence of which resulted from the subsequent action of the buyer railroad.

4. SALES ⊜54—PRACTICAL CONSTRUCTION OF CONTRACT—SELLER'S RIGHT TO ACCEPT.

A company which sold lumber to a railroad, contracting to supply it "f. o. b." its rails, had the right to accept and act on a practical construction of the contracts as to the meaning of the letters by the railroad.

5. ESTOPPEL ⊜72—MISLEADING MISTAKE—PROTECTION OF PARTY WHO HAS SUFFERED.

Where one of the parties to a sale has been misled to his disadvantage by the conduct of the other, based on mistake, when he had a right to assume the other was acting with full knowledge of the facts, and it being impossible for the parties to be restored to their original condition, the party who has suffered by the mistake will be protected.

6. SALES ⊜79—CONSTRUCTION OF CONTRACT—RIGHT OF RELIANCE.

Where a company, which sold lumber to a railroad "f. o. b." its rails, made its prices with reference to the railroad's practical construction of the contract, in relation to such letters, by payment of the lumber company's bill without deduction of payments made by a division of the railroad, and such construction was followed thereafter, the railroad cannot recover back part of the payments made on the ground that the construction was erroneous.

7. SALES ⊜88—ACTION FOR OVERPAYMENT—ISSUE OF ESTOPPEL.

In an action by a railroad to recover from a lumber company alleged overpayments on purchases of lumber, issue of estoppel of the railroad to claim any overpayment, on the ground that it had practically construed the contracts between the parties, *held* to be submitted to the jury for determination.

Walker, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Suit by the Illinois Central Railroad Company against the Brooks-Scanlon Company. To review a judgment for plaintiff, defendant brings error. Reversed.

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Robert R. Reid, of Amite, La., and W. E. Lamb, of Chicago, Ill., for plaintiff in error.

R. V. Fletcher, of Chicago, Ill., and Gustave Lemle and Hunter C. Leake, both of New Orleans, La. (Lemle & Lemle, of New Orleans, La., and Blewett Lee and W. S. Horton, both of Chicago, Ill., on the brief), for defendant in error.

Before WALKER and BATTS, Circuit Judges, and GRUBB, District Judge.

BATTS, Circuit Judge. On a former appeal (Ill. Cent. R. R. Co. v. Brooks-Scanlon Co., 241 Fed. 445, 154 C. C. A. 277) judgment for Brooks-Scanlon Company was reversed. Upon a retrial, judgment was for the Illinois Central Railroad Company.

Suit was instituted by the railroad company on December 8, 1914. Plaintiff alleged that during the years 1907 to 1912, inclusive, the railroad, on various dates, purchased lumber from the Brooks-Scanlon Company; that each contract provided for delivery to petitioner "f. o. b." its rails; that the lumber was manufactured by the lumber company, at mills at Kentwood, La., from logs carried into Kentwood by the Kentwood & Eastern Railroad Company; that at the time of each of the purchases there was in effect an agreement between the Illinois Central Railroad Company and the Kentwood & Eastern Railroad Company for a division of freight rates, by which, on all lumber manufactured from logs brought over the Kentwood & Eastern into Kentwood, and manufactured there, and shipped over the Illinois Central to territory known as "Central territory," the Kentwood & Eastern would be allowed 2½ cents per 100 pounds; that this agreement was known to the lumber company; that the lumber purchased was shipped by the Illinois Central to destinations within this territory, as it was understood it would be at the time the purchases were made; that, by reason of the joint tariffs, it was obligatory on the Illinois Central to pay, and it did pay, to the Kentwood & Eastern, on lumber so purchased from the lumber company (indicated by attached exhibits) the agreed division rates, amounting in the aggregate to $25,643.29; that the lumber company, having agreed to make deliveries "f. o. b.," was under obligations to pay the expenses of the transportation from the point of origin on the Kentwood & Eastern to the Illinois Central rails. There were also allegations as to the manner of payment, indicating the causes of the errors in making payments to the lumber company without deducting amounts paid to the Kentwood & Eastern.

The answer alleged that it was the understanding of the Illinois Central and the lumber company, at the time of the delivery, that the expressions "f. o. b.," or "f. o. b. cars," or "f. o. b. cars I. C. tracks, Kentwood," required the defendant to deliver lumber on board cars on the tracks at defendant's mill in Kentwood, and that the cost of the service in making such delivery at such point, in loading the lumber into said cars, and any other costs or charges that had accrued at the time and place of delivery, would be borne by defendant and included in the prices named; that with this understanding, upon receipt of each written order, the defendant inserted therein the prices it was will-

ing to receive, which prices were accepted by petitioner, with the understanding that they included delivery at the point and under the conditions stated; that the lumber so specified was thereafter delivered on tracks at defendant's mill in Kentwood, and that for this lumber petitioner paid defendant's invoices at the prices so specified without objection or claim of incorrectness; that any future charges that accrued or would accrue on said cars after delivery, by reason of their transportation from Kentwood to Central points, were to be borne by petitioner; that any charges accruing as the result of any action by the railroad after the lumber was received would be borne and paid by petitioner; that there were no unpaid transportation charges upon the lumber, or the logs from which it was manufactured, and that the lumber was delivered to the railroad at Kentwood free and clear of charges of every kind and nature; that it was never contemplated by petitioner and defendant that the expenses for the transportation of the lumber, or the material from which it was manufactured, should not be paid by the railroad; that the prices were fixed by defendant for the lumber with reference to the understanding that the division charges should be borne by the purchaser; that the payments to defendant, without deduction for the division charge, were made with full knowledge of all the facts, and that plaintiff is estopped from claiming from defendant the amounts paid to the Kentwood & Eastern.

In the opinion rendered on the former appeal it is said:

"It is not questioned, and, under the evidence adduced, it is not open to question, that the terms 'f. o. b.,' 'f. o. b. cars,' 'f. o. b. cars Illinois Central tracks, Kentwood,' as used in the contracts of sale and purchase, obligated the seller to pay freight charges incurred for the shipment of the lumber or the logs out of which it was manufactured, to the point at which the lumber bought was to be delivered to the plaintiff by the seller, the Brooks-Scanlon Company; that plaintiff was entitled to a delivery of the lumber on its line free of charges."

Upon the former trial the Brooks-Scanlon Company introduced no evidence, and the case was determined upon the pleadings of the parties and the evidence introduced by the plaintiff. Upon the second trial the pleadings were unchanged, but evidence was introduced by the lumber company upon the defensive issues made.

[1] The expressions "f. o. b." "f. o. b. cars," "f. o. b. tracks," etc., are as free from ambiguity as most other words and symbols. But, however well defined words used in a contract may be, it is frequently the case that there can be no proper determination of the meaning of a contract without an understanding of the circumstances and conditions with reference to which it is made. The meaning of a word is sometimes indicated by the context, and sometimes dependent upon the conditions under which it is used. While the letters "f. o. b." carry the idea that the delivery is to be made without a charge for prior transportation service, the use of the expression would not preclude inquiry as to what would be regarded as within such charges, if the conditions were different from those under which it had acquired the ordinary business significance. If the circumstances raised such a question, the doubt would furnish a proper occasion for an understand-

ing between the parties. The facts developed are that the lumber company, when it shipped logs to Kentwood, paid all the charges payable to the Kentwod & Eastern for the service, with the understanding that, if the company received an additional sum for the service, the amount would be returned to the lumber company; the railroad retaining its full original pay. Under these circumstances, and in the absence of an understanding, when the Illinois Central received lumber cut from these logs, and, because of its shipment into certain territory, had to pay a sum in addition to the stipulated price, it might be held that the lumber was not received "f. o. b." But an inquiry could naturally arise, under the conditions detailed, as to the meaning of the expression and the scope of its application. At the time of the sale, no charges were due or payable. The lumber, however, was, under certain conditions, subject to an additional charge, based upon a service already rendered. There was no patent ambiguity in the expression used. There was no doubt about the facts. But the application of the facts to the expression could well be a matter of doubt and controversy; and, being the subject of either, it was a proper subject for an understanding between the parties affected. Such an understanding having been reached, it would not be in conflict with the effect of the letters "f. o. b.," but would define the application of the expression. While these initial letters ordinarily have a sufficiently clear and definite meaning, not requiring limitations or explanations, the circumstances developed by the second trial show that they do not necessarily import a degree of certainty precluding inquiry as to their meaning, nor a degree of inflexibility preventing adjustment and understanding.

[2] Assuming that an issue may be made as to the meaning of the contract, or as to the understanding of the parties as to its meaning, it would appear that sufficient evidence was introduced to authorize submission of the issue to the jury. The Brooks-Scanlon representatives testify distinctly as to their understanding, and the understanding of the agents of the railroad company could be inferred from their conduct. The circumstance that, for a period of five years, claims were made by the lumber company and paid by the railroad company, which would accord with such meaning or understanding, would give support to the lumber company's contention. Upon the former appeal this fact was given little weight, because of the uncontroverted claim of the railroad company that the payments were by mistake, under circumstances excusing mistake. It was stated that the purchasing department of the railroad had no knowledge of the fact that the division to the Kentwood & Eastern was paid on this lumber, and that the traffic department did not know that the invoices were paid without deductions. The purchasing agent testified that, while he knew the lumber was purchased at Kentwood, he had no means of knowing whether it originated on the Kentwood & Eastern, or at points further south on the Illinois Central, and he also testified that he was not familiar with "traffic transactions."

Knowledge of a corporation may be only through individual representatives of the corporation; and, ordinarily, knowledge resulting from transactions by an agent within his authority, or acquired by

him in the conduct of such business with reference thereto, will be knowledge imputed to the corporation. But this case, in the aspect under consideration, deals with the construction placed upon a contract by the parties who made it, and an inference with reference thereto from the conduct of the parties, based upon an assumption of knowledge of pertinent facts, cannot be indulged, where the knowledge is merely imputed to the corporation, and does not actually exist in some individual representing the corporation.

Upon the former appeal, not only was there an absence of evidence of the understanding of defendants, but an absence of evidence of knowledge in any representative of the railroad company, from which an inference could be legitimately drawn that he had given a construction to the contract other than that suggested by the ordinary meaning of its terms. In passing upon such an issue, even the knowledge which the law imputes to a man (as the published tariffs) could not logically be considered.

In the case made out on the second trial there was proof that the requisite knowledge existed, or, at all events, there was sufficient evidence of such knowledge to authorize submission of the issue as to its existence to a jury. Mr. Bradley, purchasing agent of the railroad, admitted on the second trial that he had actual knowledge of the tariffs providing for the divisions—that he had knowledge of the fact that the lumber was made from logs that came from the Kentwood & Eastern and that the divisions were actually paid to the Kentwood & Eastern. He is also made to testify that he understood that defendants were to receive the specific prices named in the contracts, that there was nothing to be taken off the prices, that nothing was to be deducted, and that he understood that defendants so understood. From the remainder of his testimony it is to be inferred that the purport of the questions to which the witness gave his acquiescence was not realized, and little effect is given to that which would otherwise be conclusive. But, while these statements are not to be taken as an admission of complete knowledge, a jury would be warranted in assuming that he had, in addition to the knowledge admitted, knowledge of the facts it was his duty to know in the conduct of his work, and which he could easily have ascertained. If a jury should so believe, it would have a sufficient basis for a finding that the corporation had full knowledge of all of the facts, and that it gave a practical construction to the contract, by which it is now bound.

[3] Every shipment from Kentwood that went into Central territory involved a division and a payment by the Illinois Central to the Kentwood & Eastern Railroad. All of the officials and employés of the Illinois Central have notice of the published tariffs applicable to the shipments from Kentwood. Some of them had actual knowledge of the tariffs, of the origin of the timber, and of the destination of the lumber. It was the duty of the auditing and paying departments to know what was contracted to be paid for lumber, and what was paid. It was the duty of the purchasing department to know what was actually being paid. Under the facts disclosed, it would involve too great an assumption of carelessness, indifference, and incompetency upon

the part of the responsible agents and employés of the Illinois Central to assume, as a matter of law, that they did not know that, on shipments from Kentwood, the railroad was paying, not only the price fixed by the lumber company, but also the division to the Kentwood & Eastern. During all the period of more than five years the railroad company was paying the entire amount fixed by the contracts as the price of the lumber, and when it shipped the lumber into Central territory, it paid the additional amount required by its division with the local railroad. The transactions were very large in number and in the amounts involved. These circumstances would warrant a jury in concluding that the letters "f. o. b." were accepted by both parties as referring alone to charges connected with loading and handling the lumber at the shipping point, and as not having reference to charges conditional in their character and the existence of which resulted from subsequent action of the purchaser.

[4-7] The lumber company had the right to accept and act upon this practical construction of the contracts. It had a right to, and did, consider the payments made to it by the Kentwood & Eastern (of the divisions from the Illinois Central) in fixing the prices of the lumber. While only one price was made, whether the lumber was shipped into Central territory, or into the territory to which the division did not apply, there is evidence that the money to be received from the division was considered in fixing the price. The experience of the lumber company indicated about the percentage which was to go into the one territory and the other, and this percentage furnished a reasonable basis for the determination of the prices. Where one of the parties to a transaction has been misled to his disadvantage by the conduct of the other, based upon mistake, the circumstances being such that he had a right to assume that the other was acting with full knowledge of the facts, and it being impossible for the parties to be restored to their original condition, the party to the contract who has suffered by the mistake of the other will be protected. The lumber company, after the first contract had been practically construed, by payment of its bill without deduction of the division, was warranted in assuming that like contracts would be given a like meaning, and was warranted in giving a lower price than it would have given, if deductions had been made. The Lumber Company made its prices with reference to this practical construction of the contract. If the practical construction is not the correct construction, it was still the construction, or apparently the construction, of the railroad company, acquiesced in and acted upon by the lumber company. The prices having been fixed with reference to this practical construction, and the lumber company receiving as the price less than it would otherwise have charged, the railroad company ought not now to be permitted, by insisting upon a different construction, to retain the benefit of the reduced prices and secure the return of the sums payment of which induced the prices; or, at all events, the issue of estoppel developed by the pleadings and evidence ought to be submitted to the jury for its determination. It may be that the plea of estoppel could be applied to part only of the amount in controversy.

The correctness of the propositions made in the opinion on the first

appeal we have no occasion to question; but the defenses developed by the evidence adduced by the defendant upon the last trial of the case should have been submitted to the jury.

The judgment is reversed.

WALKER, Circuit Judge, dissents.