(86 South. 652)

No. 22691.

### THOMPSON v. HIBERNIA BANK & TRUST CO.

(Nov. 3, 1920.   Rehearing Denied Nov. 29, 1920.)

*(Syllabus by Editorial Staff.)*

1. **Parties ☜40(2)—Petition in intervention held to show coincidence with original petition.**

In a suit by a trustee in bankruptcy to recover from a bank the proceeds of a check deposited with it by the bankrupt, a petition in intervention, claiming the proceeds of the same check, which intervener had given to the bankrupt by way of loan secured by collateral with respect to which bankrupt had violated a trust agreement, shows coincidence with the original petition, so that it would be proper to have consolidated the suits if they had been filed separately, and it was therefore not error to overrule an exception to the petition in intervention.

2. **Carriers ☜59—Bills of lading are fully negotiable, and as to holder for value in good faith not subject to equities.**

Under Act No. 150 of 1868, § 9, making bills of lading negotiable in the same manner and to the same extent as bills of exchange and promissory notes, which is similar to the subsequent provision in the Uniform Bills of Lading Act (Act No. 94 of 1912), bills of lading are fully negotiable, and a holder thereof for value in good faith before maturity is entitled thereto free of any equities between the original parties.

3. **Carriers ☜59—Application of proceeds to past indebtedness is consideration for indorsement of bill of lading.**

The application by a bank of the proceeds of the sale of property covered by a bill of lading to a previous indebtedness of an indorser of the bill of lading is sufficient consideration for the indorsement to the bank to make it a holder for value.

4. **Estoppel ☜72—Innocent party, who contributed to loss, must suffer.**

Where one of two innocent parties must suffer loss through the fraud of another, the burden of the loss should be imposed on him who most contributed to it.

5. **Banks and banking ☜140(6)—Payee of check cannot complain of refusal to honor because of bank's setting off prior debts.**

Where a bill of lading was indorsed to a bank to secure future overdrafts, without any particular overdraft being specified, and the bank, after the existing overdraft had been paid in full, refused to honor checks of its customer and applied the proceeds of the property covered by the bill of lading to the customer's past indebtedness to it, the payee of one of the checks refused by the bank cannot complain, in the absence of complaint by the customer, of the bank's refusal to honor the check as an overdraft secured by the collateral.

Appeal from Civil District Court, Parish of Orleans; T. C. W. Ellis, Judge.

Suit by W. B. Thompson, as trustee in bankruptcy of E. Martin & Co., against the Hibernia Bank & Trust Company, in which the John M. Parker Company intervened. Judgment for defendant bank, dismissing both plaintiff's petition and the petition in intervention, and plaintiff and intervener appealed, but plaintiff subsequently settled with defendant out of court. Judgment affirmed on appeal by intervener.

Miller, Miller & Fletchinger, of New Orleans, for appellant.

McCloskey & Benedict, of New Orleans, for appellee.

SOMMERVILLE, J. Plaintiff, trustee, alleged that the bankrupts, E. Martin & Co., had, within four months prior to the date of bankruptcy, that is:

"On or about the 11th day of March, 1912, delivered to the Hibernia Bank & Trust Company [defendant], a banking corporation, domiciled and doing business in the city of New Orleans, for deposit, a check drawn to its order by John M. Parker Company, on the Canal-Louisiana Bank & Trust Company, of New Orleans, La., for $8,000.

"(II) That upon receiving said check for $8,000 your petitioner is informed and believes, and so alleges, the Hibernia Bank & Trust Company cashed said check in due course through the clearing house, and credited said firm therewith."

And plaintiff prayed that the bank deliver to him the proceeds of the check, together with interest, from March 12, 1912.

June 11, 1913, defendant bank answered the above petition, admitting the allegations contained in the sections of the petition quoted.

February 19, 1914, John M. Parker Company intervened in this suit, making the above-quoted and other paragraphs of plaintiff's petition parts of its petition. It further alleged:

"(3) Intervener further shows that, on the 11th day of March, 1912, it lent to the said E. Martin & Co. the sum of $8,000, which was to be repaid within 24 hours, and that, as collateral security to the said loan, the said E. Martin & Co. hypothecated, pledged, and delivered to intervener, at the time of said loan of $8,000, four certain bills of lading," for 83 bales of cotton.

\* \* \* \* \* \* \*

"Intervener further shows that, on the said 11th of March, 1912, intervener redelivered the said bills of lading so held by it to Eug. Martin, Jr., a member of the said defendant firm, in trust, to sell for intervener's account only, the proceeds in case of sale, or the shipping documents to be obtained therefor in case of shipment, to be the property of this intervener, and to be held in trust by the said E. Martin & Co. for it, and to be at once turned over to intervener by said firm, and the said Eug. Martin, Jr., then and there executed and delivered to this intervener, in the name of his said firm, a certain trust receipt, dated New Orleans, La., March 11, 1912, which was filed as an exhibit to the original petition in the proceedings" by intervener against E. Martin & Co.

"(5) Intervener shows that, in spite of the said trust agreement, and in violation of their duties and obligations to intervener in the premises and without right or title thereto, the said E. Martin & Co. hypothecated and pledged all of the said bills of lading to the Hibernia Bank & Trust Company, defendant in this cause, to secure a pre-existing debt of said E. Martin & Co. to said Hibernia Bank & Trust Company.

"(6) This intervener further shows that demand was made by intervener upon said Hibernia Bank & Trust Company for the said bills of lading or the said 83 bales of cotton represented thereby, while the said bills of lading were in the possession of the said Hibernia Bank & Trust Company, and the said Hibernia Bank & Trust Company was fully acquainted with intervener's rights thereto, but refused and failed to comply with said demands."

"(8) That by the proceedings hereinbefore set forth, and as shown in the original petition in this cause, in the allegations thereof, which have been adopted by this intervener, the said Hibernia Bank & Trust Company obtained, used, and converted to its own use and benefit, both the sum of $8,000, represented by the check referred to in plaintiff's petition, which this intervener lent the said E. Martin & Co. as aforesaid, and the cotton which was pledged

to this intervener by said E. Martin & Co. to secure the said loan.

"That the said Hibernia Bank & Trust Company secured no better right or title to the said 83 bales of cotton than E. Martin & Co., and that by said transaction the said Hibernia Bank & Trust Company converted to its own use the property of this intervener, and should be required to account to your intervener for the value thereof, which is in controversy between the plaintiff and the defendant in this cause."

Intervener then prayed for judgment against the original plaintiff in the cause, dismissing his demand as to the $8,000 claimed by him, "and in favor of intervener and against said Hibernia Bank & Trust Company for the full sum of $8,000, with legal interest thereon from March 11, 1912, until paid, and for all costs."

Thereupon the defendant filed an exception of no cause of action to the petition of the intervener, and argued that there was no coincidence or relevance between the demand of plaintiff and the alleged cause of action in the original petition of intervention; that the demands were not the same, and the relief prayed for was not the same; and that intervener could not, by ingrafting on these proceedings a separate demand, assert causes of action disconnected with the original suit; particularly after issue had been joined upon the original petition of plaintiff.

[1] From the above-quoted provisions of the original petition of plaintiff and the original petition of intervention we find that there is coincidence in these petitions with reference to the check of intervener for $8,000, which was being claimed by the plaintiff and intervener. Under such circumstances, it would have been proper, if the suits had been filed separately, for them to have been consolidated and tried together on the order of the district judge, and the exception filed by defendant was properly overruled.

On April 13, 1917 (that is, after the case had been argued and submitted), intervener filed the following amended prayer to its intervention:

"Now comes John M. Parker Company, through its undersigned attorneys, and amends the prayer of its petition of intervention, so as to pray the court that defendant, Hibernia Bank & Trust Company, be condemned to pay intervener the proceeds of the 83 bales of cotton referred to in the said petition of intervention, in excess of the sum of $3,000, as will be shown by the accounts sale of the deposition of said cotton, which said defendant has agreed to file in these proceedings, with interest on the proceeds of said 83 bales of cotton at 5 per cent. per annum from March 11, 1912, until paid; and intervener prays for costs and all general and equitable relief."

There was judgment in favor of the defendant bank, dismissing plaintiff's petition and the petition of intervener, John M. Parker Company. Plaintiff and the intervener appealed; but plaintiff and the bank have composed their differences, and that appeal is not before us.

The only matter in contest is the proceeds of the 83 bales of cotton which were received by E. Martin & Co. from John M. Parker Company, for the purpose of sale and transfer for account of John M. Parker Company, but which were wrongfully delivered by Martin & Co. to the defendant bank, and the proceeds applied by said bank to the past-due note of E. Martin & Co., which was held by the bank.

It is alleged by intervener and admitted by the bank that "E. Martin & Co. hypothecated and pledged all of the said bills of lading to the Hibernia Bank & Trust Company, defendant in this cause, to secure a pre-existing debt of said E. Martin & Co. to said Hibernia Bank & Trust Company," although it is argued that the bills of lading were pledged to the bank to secure overdrafts of Martin & Co. on March 12, 1912.

It appears from the record that the cotton was sold by the bank for $3,467.60.

The record shows: That E. Martin & Co. were in the cotton business, and that John M. Parker Company was one of their customers, and that they deposited in the Hibernia Bank & Trust Company. That E. Martin & Co. were largely indebted to the bank, which indebtedness was represented by notes, some of which were past due, and others to become due. That they frequently overdrew their account, and were required by the bank to place collaterals to meet any overdraft that might arise. That on March 11, 1912, E. Martin & Co. borrowed $8,000 from John M. Parker Company, which was represented by a check on the New Orleans Canal & Banking Company, and gave as security therefor negotiable bills of lading for 83 bales of cotton, worth $3,476.60, with the promise of additional collaterals during the day. On the same day Martin & Co. deposited the $8,000 check in defendant bank; and on that same day Martin & Co. gave to the bank, as collateral, $100,000 of the bonds of the Washington Cypress Company to secure overdrafts on the next day. These bonds appear to have been the property of Mrs. Martin, and were sued for subsequently. The bank demanded other collateral on March 11, and E. Martin, Jr., of the bankrupt firm, returned to John M. Parker Company and represented that his father, E. Martin, had made other arrangements, and asked for the return of the negotiable bills of lading which had been delivered that same day, and those bills of lading were returned to E. Martin, Jr., and they were taken to the Hibernia Bank & Trust Company as collateral security for past-due notes or overdrafts of the next day. On the next day, March 12, E. Martin & Co. deposited a check for $20,000 with the defendant, and also some $1,888 worth of exchange. Thus the overdraft of the previous day was wiped out, and checks for a very large sum, including the $8,000 check of John M. Parker Company, were thrown out by the bank on March 12, and all of the deposits and collaterals deposited by E. Martin & Co. were credited on the past-due note of E. Martin & Co., as a provision on said note permitted the bank to do.

On March 11, 1912, when John M. Parker Company redelivered the bills of lading to E. Martin, Jr., it took a trust receipt therefor, reciting that they were—

"the property of the said John M. Parker Company, were held by it as collateral, under the express agreement that the said property was to be held in trust for it and as its property, with liberty to sell the same for its account, the proceeds in case of sale, or the shipping documents obtained therefor, to be held in trust for the said John M. Parker Company, and to be at once turned over by the undersigned to the said John M. Parker Company, which is the owner or pledgee of the property herein described."

Martin & Co. violated the trust, and delivered the bills of lading to the bank as collateral for past-due notes, or for any overdraft that might exist on the morning of March 12. The bank was not at that time aware of the trust receipt.

[2] It was under these circumstances that the defendant bank obtained or received the bills of lading involved. They were negotiable instruments, transferable by the holder, and they were received by the bank, who became a bona fide holder without notice, and its title thereto was not prejudiced by any defect or flaw in the title of prior parties, or to the defenses available to John M. Parker Company against E. Martin & Co.

In its petition, intervener also sets forth that:

"The said Hibernia Bank & Trust Company obtained, used, and converted to its own use and benefit both the sum of $8,000, represented by the check referred to in plaintiff's petition, which intervener lent to the said E. Martin & Co., as aforesaid, and the cotton which was pledged to this intervener by the said E. Martin & Co. to secure the said loan.

"That the said Hibernia Bank & Trust Company secured no better right or title to the said 83 bales of cotton than E. Martin & Co., and that by said transaction the said Hibernia Bank & Trust Company converted to its own use the property of this intervener, and should be required to account to your intervener for the value thereof, which is in controversy between the plaintiff and the defendant in this cause."

In argument, intervener claims want of consideration by defendant bank for the negotiable bills of lading. But no such allegation was made in its petition. It argues:

"The Hibernia Bank & Trust Company has no title to the bills of lading in question at all, because they were procured through a subterfuge, or at least on account of a promise by the bank, which was completely repudiated the next day. In no event should the Hibernia Bank & Trust Company have secured better title to the bills of lading than had E. Martin & Co., and E. Martin & Co. were without authority under the trust receipt to pledge the bills of lading."

They cite, in support of the argument, Hunt & McCauley v. M. C. R. R. R. Co., 29 La. Ann. 446, and Lallande v. His Creditors, 42 La. Ann. 705, 7 South. 895. And the argument proceeds that ignorance on the part of the bank, the pledgee, of the character of Martin & Co.'s title to the bills of lading was no excuse. And it continues:

"The conduct of the bank in this case made the pledge of these bills of lading a nudum pactum, and the bank cannot be heard to question the title of John M. Parker Company to the bills of lading. * * * We challenge appellee to point out any equivalent received by Martin & Co. for these bills of lading."

[3] The proceeds of the cotton were placed to the credit of the account of E. Martin & Co., and that was an equivalent received by that company for the bills of lading. The Uniform Bills of Lading Act had not been adopted when the transaction involved in this case occurred. Act No. 94 of 1912, p. 101. The law in effect at that time was

148 LA.—3

Act No. 150 of 1868, p. 193, the ninth section of which reads:

"That all receipts, bills of lading, vouchers or other documents issued by any cotton press, wharfinger, forwarder or other person, * * * railroad, transportation or transfer company, as by this act provided, shall be negotiable by indorsement in blank, or by special indorsement in the same manner and to the same extent as bills of exchange and promissory notes now are."

The above provision is similar to one of the provisions in the Uniform Bills of Lading Act; and, in construing the extent of the terms thereof with reference to a transfer of such negotiable bill of lading, the court said in Hardie & Co. v. V., S. & P. Ry. Co., 118 La. 253, 42 South. 793, that the case of Hunt v. Railroad, supra, was overruled. In the Hardie Case, the plaintiff sued on a bill of lading, which it claimed to be a negotiable instrument, representing a number of bales of cotton which had been shipped by the shipper and delivered to the railroad prior to the acquisition by Hardie of the bills of lading. The court said, in part:

"The question is whether, under the statutes of the state, a bill of lading is negotiable in a restricted sense only, or whether in a broad sense. * * *

"Under the common law, prior to Acts 1868, p. 194, No. 150, it was, in substance, held that the bill of lading was not in all respects negotiable. Adams v. Trent, 19 La. Ann. 262. The statute above referred to should govern.

"Bills of lading, under the statute cited above, are to be taken in the same manner and to the same extent as bills of exchange and promissory notes now are. There is no room left for the least difference between bills and notes and bills of lading. As to negotiability, one is to be taken as the equivalent of the other. The full negotiability of bills of lading was recognized in the case of Delgado v. Wilbur, 25 La. Ann. 83. It is true that subsequently a different opinion was expressed. Hunt v. Railroad, 29 La. Ann. 448. The court was not unanimous. * * * It occurs to us that the view of the majority should not be followed, and that the decision should be considered among the overruled.

"The Lallande Case, 42 La. Ann. 705, 7 South.

895, went, as we think, beyond the necessity of the case. * * *

"The statute of Maryland, on the other hand, is in effect similar to the statute of Louisiana; and in that state the law was construed to mean that bills of lading are negotiable instruments in full without restriction. Tiedeman v. Knox, 53 Md. 612.

"Prof. Denis, in his work on 'Pledge,' who has made a special study of the subject, informs us that the statute of Maryland has rendered bills of lading fully negotiable. He says: 'It is the law of France and other continental countries of Europe. The reason of such a rule, where it exists, is the same as the reason of the negotiability of bills of exchange and promissory notes—to promote commerce by facilitating financial operations.' Denis on Pledge, §§ 390, 391, 393, et seq."

And there was judgment in favor of Hardie & Co.

It is clear that the Hibernia Bank & Trust Company took these bills of lading in good faith, either as additional collateral or to secure pro tanto a prospective overdraft; and it is in the same position as a holder of a promissory note for value in good faith before maturity, and, as such, no layman, or seeker for equity, in any form of holder, can affect the title of the bank, which it acquired to the bills of lading.

[4] John M. Parker Company were equally innocent in the matter. Martin & Co. imposed upon Parker by pledging the bills of lading with the bank, instead of selling the cotton and turning the proceeds over to the Parker Company. In such circumstance, Parker must bear the burden, because, where one of two innocent persons must suffer, it must be he who most contributed to the loss. The bank did not wrongfully convert to its own use the cotton or its proceeds, and it cannot be required to account for the value thereof to intervener. It received the bills of lading in due course, and the proceeds thereof were regularly placed to the credit of Martin & Co. Intervener was not known to the bank in connection with the bills of lading. There was no contractual relation between them.

[5] Mr. Martin, Sr., was dead at the time of trial; no one testified that the bank, on receiving the bills of lading, had agreed with Martin to honor his overdrafts on the following day. The vice president of defendant bank testified there was no such agreement. Under such circumstances, the bank did not violate any condition or obligation when it threw out the checks of Martin which came to it on March 12. Intervener and the payees of the checks thrown out have no right of action against the bank in the absence of an agreement by the bank to honor those checks.

Martin & Co. have not complained, and cannot complain, of the action of the bank in the premises; and third persons cannot complain thereof, although the latter may have just complaint against Martin & Co. with whom they contracted.

The pleadings do not allege that there was any promise made by the bank to apply the bills of lading or the proceeds thereof to any specific overdraft, and there was no promise made to John M. Parker Company to that effect.

If the record established that, before Martin & Co. pledged the bills of lading with the Hibernia Bank & Trust Company, the officers of the bank had seen John M. Parker Company, and the bank had obligated itself to honor the checks of Martin & Co. drawn against the pledged bills of lading, and the bank had failed to do this, the situation would be different. But the suit is no longer one by plaintiff for the $8,000 represented by the check.

The petition of intervention as amended is the only matter before the court, and the demand is for the value of the proceeds of the cotton represented by the bills of lading which were pledged to the bank by Martin & Co. The cotton did not represent $8,000.

It was worth only $3,467.60, and after the bank had discussed every collateral that Martin & Co. had with it, it still was a loser to the extent of $2,629.65. If the proceeds of the bills of lading were pledged to secure any possible overdraft that might come in the next day, they were not sufficient to meet these overdrafts; and all of the checks of Martin presented to the bank on March 12, 1912, were thrown out.

The judgment appealed from by John M. Parker Company is affirmed, with costs.

O'NIELL, J., concurs in the decree.