BARNETT, Appellant, v. WESTERN UNION TEL. CO.

---

(Mar. 28, 1927. Opinion and Decree.)
(Apr. 11, 1927. Rehearing Refused.)

---

*(Syllabus by the Court.)*

1. **Louisiana Digest—Telegraph and Telephone Companies—Par. 11.**

It does not appear that a telegram sent from Opelousas at 9:45 and delivered at New Orleans at 10:05 constitutes

such delay and negligence on the part of the defendant sufficient to charge it with negligence and to subject it to damages.

2. **Louisiana Digest—Telegraph and Telephone Companies—Par. 11.**

The telegram did not inform the defendant, nor was it otherwise informed, of the necessity of unusual haste in making delivery.

Appeal from Civil District Court, Division "A". Hon. H. C. Cage, Judge.

Action by J. P. Barnett against Western Union Telegraph Company.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Miller, Miller & Fletchinger, of New Orleans, attorneys for plaintiff, appellant.

Spencer, Gidiere, Phelps & Dunbar, and Marks, of New Orleans, attorneys for defendant, appellee.

CLAIBORNE, J.    The plaintiff claims damages for delay in delivering a message.

The plaintiff alleged that to the knowledge of the defendant he was engaged in the cotton business in the City of Opelousas; that the defendant was in the business of transmitting messages by telegraph from Opelousas to New Orleans; that the price of cotton on the exchanges is subject to sudden fluctuations and that promptness in the transmission and delivery of messages in giving orders for the purchase and sale of cotton is of the utmost importance as defendant well knows that John M. Parker Co. in New Orleans is engaged in the cotton business; that on October 2, 1923, at 9:40 o'clock a. m., plaintiff went to defendant's office in Opelousas and tendered the following message for transmission to John M. Parker Co. at New. Orleans:

"Call two hundred bales Lighter Cotton shipment today, also call two hundred bales and deliver there."

That said telegram was transmitted from Opelousas at 9:45 a. m. of said day and was received at defendant's main office in New Orleans and transcribed at 9:48 a. m., and was delivered at the office of John M. Parker at 10:05 a.m.; 'that the office of John M. Parker is situated only a few hundred feet from the office of defendant, and that the customary time for delivering such messages at the office of John M. Parker is less than five minutes from the time of their receipt; that the said message instructed John M. Parker to call or fix the price of 400 bales of cotton theretofore sold, for petitioner's account in New Orleans, the prices on which cotton were subject to fixing on plaintiff's call at any time on the basis set out in the agreement of sale and according to the market price obtaining in the New Orleans Cotton Exchange at the time of the call; that on said October 2, 1923, an official report of the Department of Agriculture of the U. S. Government was to be announced at 10 a. m., and that the publication of said report is frequently followed by immediate fluctuations in the price of cotton, all of which was well known to the defendant; that had the defendant delivered said message to John M. Parker, promptly, and within the customary time, plaintiff's orders would have been executed prior to 10 a. m. and prior to the publication of the Government report which plaintiff was anxious to have done; that immediately upon the publication of the government report on October 2nd the price of cotton on the New Orleans exchange declined violently and by the time the message was delivered and John M. Parker had an opportunity to execute the order contained in said message, the price of cotton on the New Orleans exchange had declined 100

points or $5 a bale, causing plaintiff a loss of $2000, which plaintiff claimed of defendant on account of its negligence.

The defendant admitted all the allegations of the petition up to and including the delivery of the message to John M. Parker at 10:05 a. m., but denied all the other allegations charging them with negligence.

There was judgment in favor of defendant dismissing plaintiff's suit, and he has appealed.

The only two questions in this case are first, whether the defendant was guilty of negligence or unreasonable delay in the delivery of the message; and second, whether the defendant knew or should have known that the message should have been delivered prior to 10 o'clock a. m.

1st. It is admitted that the message left Opelousas at 9:45 a. m. and reached the main telegraph office at New Orleans at 9:48.

The defendant has a receiving or branch station on the floor of the cotton exchange, and the office of John M. Parker is 100 yards from the cotton exchange. Joseph A. Airey, a member of John M. Parker, testified that it took from 3 to 5 minutes to deliver a message from the main office of the Western Union to his office and should be two minutes to the floor of the cotton exchange, and that it would have taken him one or two minutes to fill the order. According to this witness, therefore, the message should have been delivered to him upon the floor of the exchange in two minutes after 9:48 and he could have filled the order in two minutes, leaving him a margin of eight minutes from ten o'clock.

There is not a member of the firm upon the floor at all times; he was not upon the floor on the morning of October 2nd; but it had been the custom of the telegraph company to deliver all messages to buy or call in case of his absence to their brokers Airey and Stouse; the telegraph company had no instructions but it was their custom; all messages for John M. Parker are sent from the main telegraph office to the cotton exchange by a pneumatic tube and are delivered by the messenger either to the ring or to the office of John M. Parker.

"Q. If it is to buy or sell it is delivered to Airey and Stouse your future brokers?
"A. That is it.
"Q. Do you know if it is to fix or call and Mr. Tom Parker or John M. Parker, Jr., are not there, is that message delivered to Airey and Stouse or your office on Union street?
"A. I cannot answer that."

Henry J. Stouse, of the firms of Airey and Stouse, future brokers, testified that they executed most of the orders of John M. Parker; they are most of the time on the floor of the exchange.

"Q. What is the practice of your firm with reference to the receipt of telegrams for John M. Parker and Co.?
"A. The Western Union delivers them either to myself, Mr. T. L. Airey, or Mr. ———, or Mr. ———; these telegrams are usually delivered to the four of us and we telephone to John M. Parker and Co. and ask if it is to be executed if it is a future order and if not we have it sent to the office.
"Q. The custom is, only messages delivered to Airey and Stouse or messages addressed to John M. Parker on which the sender directs to buy or sell in the future market. They are the only character of messages usually delivered to Airey and Stouse, otherwise the messages are sent to the Union street office of John M. Parker?
"A. Yes, sir."

Mr. Thomas Parker testified that he was secretary of the John M. Parker Company

and that he was on the floor of the cotton exchange on October 2nd from 9:30 a. m. until a while after 10.

On the part of the defendant, F. H. Wilson, route supervisor of the defendant, describes the mode of receiving and delivering messages thusly:

The telegraph office is at the corner of St. Charles and Gravier streets. (The cotton exchange is on Carondelet between Gravier and Union and the office of John M. Parker is on Union between Carondelet and Baronne streets.) The Opelousas wire is on the third floor of the building; the operator receives and transcribes the message, and puts upon it the time it is received; he then throws it on the clip; the route aids secure probably 25 wires and messages from these clips and they are brought to the route center; he takes the messages and assorts them as to the point they are going and drops them in the various baskets; some are for other cities; those for New Orleans are dropped in a basket known as "city business"; they are then assorted for the different branches, some 20 in number; those for John M. Parker are sent to the cotton exchange branch in a pneumatic tube; it takes one or two minutes to transfer them, depending on the weather; at nine in the morning the business is very heavy and only one box can be sent at a time; it is customary to send Parker's messages to the cotton exchange; the volume of telegrams on the morning of the Government report is very heavy.

A. M. Porteous, manager of the Western Union at the cotton exchange for 12 years, testified that it was customary to deliver messages for John M. Parker at the cotton exchange through the tube; the tube clerk takes them out and distributes them to the copying clerk who copies them and gives them to the delivery clerk, who hands them to the messenger to be delivered; the message in suit reached the cotton exchange at 9:52; the custom was to deliver messages to buy or sell to Airey and Stouse on the floor and all other than those were to go to their office on Union street; for a few minutes before the Government report is received the volume of telegraph business is very busy and an additional force is necessary; there are floor boys and other boys for the outside all the time; he would have sent the message sued on to the office of John M. Parker on Union street; at 9:54 the message left the cotton exchange to be delivered; the messenger boy returned at 10:10; there was another message at that time on the same route.

It will thus appear that the message left Opelousas at 9:45, reached New Orleans at 9:48, was transmitted to the cotton exchange at 9:52, left that place at 9:54 and was delivered at the office of John M. Parker, a distance of approximately two blocks, at 10:05 or in twenty minutes from the time it left Opelousas. From the time it left Opelousas, 9:45, to the time it was put in the hands of the messenger boy, 9:54, there is not and there can be no charge of delay; the only time unnecessarily consumed was perhaps the time from 9:54 to the time of delivery, 10:05.

If it had been delivered at 10, within six minutes it would have been too late to act before the publication of the government report, and yet only six minutes for the messenger to make delivery. We do not consider that this would have constituted negligence under the conditions of this case, or that the parties to the contract had counted by minutes. The plaintiff himself contributed to his loss by sending from Opelousas to New Orleans on a panicky day like October 2nd a message which he intended to be delivered and

acted on before 10, a difference in time of only 15 minutes.

Mailhot v. Pugh, 30 La. Ann. 1359; Thompson v. Hibernia Bank & Trust Co., 148 La. 57, 86 South. 652.

2nd. The learned trial judge decided in favor of defendant on the ground that the damages claimed were not in contemplation of the parties under Article 1934 of the Civil Code. That the telegram itself did not inform the defendant of the importance of delivering the message before 10 a. m., nor were they informed of that urgency in any manner. We are of the same opinion. In the case of Mechanics' Bank vs. Gordon, 5 A. 604, the defendant was sued for $10,000 for failure to deliver a like sum entrusted to him in a package stolen from him.

The judgment was in favor of defendant. The court stated that the defendant had not been warned of the necessity of great care by informing him of the very valuable contents of the package.