### LYNN v. LAFITTE et al.
#### No. 5493.

Court of Appeal of Louisiana. Second Circuit.

Oct. 29, 1937.

D. H. Perkins, of Shreveport, for appellant.

Hendrick & Hendrick and Frank Blanchard, all of Shreveport, for appellees.

DREW, Judge.

Plaintiff in this suit claims the ownership of two bales of cotton. He alleged the cotton was raised by him and after it was picked was stolen by one Willie Lafitte and ginned by him at the Belcher Gin Company, under the name of "John Taylor"; that Lafitte sold the cotton to T. M. May who stored it in the American Warehouse & Compress Company at Shreveport, La., and warehouse receipts were issued to T. S. McDavitt, of Hope, Ark. He prayed that the cotton be sequestered and that after trial he be decreed the owner of same and that it be delivered to his possession. He made defendants Lafitte, T. May, and T. S. McDavitt.

E. N. May and T. S. McDavitt answered admitting the cotton was ginned, sold, and stored as alleged, but denying that plaintiff was the owner of same. All other material allegations of the petition are denied and, further answering, alleged that E. N. May purchased the two bales of cotton from Willie Lafitte who was acting as agent for John Taylor; that he purchased it in good faith and that he is the owner of the cotton.

Willie Lafitte answered denying the principal allegations of plaintiff's petition and, further answering, alleged he was employed by Booker T. Player and James Player to haul the two bales of cotton from John Taylor's place to the Belcher Gin Company and that he hauled same under the instructions of the two Players. He further alleged the cotton was raised and picked on the place owned by John Taylor and was not hauled from plaintiff's place and was not plaintiff's property; that he had no interest in the cotton and merely hauled it for the Players.

On these issues the case was tried below resulting in judgments for defendants.

The lower court's decision is based upon equitable estoppel. Estoppel was not pleaded below but in this court defendants have filed such a plea.

The lower court's opinion is as follows:

"Plaintiff relies upon the testimony of his overseer to make out his case. This man says that between the dates of October 10th and 18th, 1936, he missed from a remote section of plaintiff's plantation between two and three bales of cotton which had been picked and left in the fields over night; that during the alleged period he would see the cotton each night and estimate the amount taken next morning; that after the first shortage he continued to leave the cotton in the field knowing and intending that it be stolen in the hope of catching the thief. He admits that he took no steps to catch the thief or stop the thefts and that he did not report the losses to his employer. He says that he suspected Lafitte when he learned that he had ginned the two bales at the Belcher Gin Company in the name of Johnny Taylor, whereas he ginned the cotton that he raised at the gin of Mr. Lynn, upon whose place he lived.

"Mr. Lynn says that all cotton picked should have been brought each night to the gin where it was protected by watchmen and that he did not know his foreman was derelict in his duty and disobeying his instructions by leaving the cotton in the field. That he did not know whether the cotton seized was his or not, as the matter was not reported to him until the first of November.

"Without reviewing all of the testimony, we are satisfied from it and the confession of Lafitte that he stole the cotton seized from the Lynn place and sold it to defendant May, who did not make the purchase until he had satisfied himself from inquiries made of the local ginner that the purchase was all right. Lafitte repudiates his confession and, as is always the case, claims that it was made under the duress of a brutal beating. The deputies concerned are men of proven probity, having served this court for many years. We put more faith in their denial than in Lafitte's accusation. We then find that the cotton was stolen and sold as alleged.

"The equitable rule that where one of two innocent parties must suffer loss through the wrongdoing of another, the burden of loss should be imposed on him whose act or omission enabled the wrongdoer to commit the fraud, has been frequently approved by our Supreme Court.

"It is recognized in Overland Texarkana Company v. Bickley, 152 La. 622, 94 So. 138, but not applied because the owner, having parted with his possession under a valid conditional sale, was not at fault.

"It is both recognized and applied in Thompson v. Hibernia Bank & Trust Company, 148 La. 57, 86 So. 652; Young v. Gretna Trust & Savings Bank, 184 La. 872, 168 So. 85; and Haley v. Woods, 163 La. 911, 113 So. 144.

"In the present case, the plaintiff's overseer, for whose acts he was responsible, was grossly negligent in leaving the cotton in the field after being instructed to put it each night in a safe and guarded place. He was even more grossly negligent in continuing to leave it out after becoming aware that it was being stolen and in not taking some steps to catch the thief. His actions go much further than mere laches in that he left it out knowing that it would be stolen and 'intending' that it be stolen in the hope of catching the thief. Under such circumstances, to throw the loss upon an innocent third purchaser would be a grave injustice perpetuated in direct defiance of the above quoted rule approved by our highest court. He did not even take the precaution of warning the ginner in the vicinity.

"The prayer of the petition asking only recognition of the ownership of the cotton and the restoration of its possession to plaintiff, there is no judgment we can render against Lafitte, though we find him culpable.

"For the reasons above assigned, the writ of sequestration issued herein is dissolved and plaintiff's demands rejected at his cost.

"E. P. Mills,
"District Judge."

We concur in the facts as found by the lower court but disagree with its application of the law to these facts. We would like to go further with the facts than did the lower court.

The cotton was stolen by Lafitte at different intervals between the dates of October 10th, and 19th, 1936. It was near the last of that month that plaintiff acquired the knowledge that Lafitte was the thief and what disposition had been made of the cotton. Soon after gaining this information, Lafitte was arrested and finally admitted his guilt. On November 18th following, this suit was filed. It can be readily seen from the above facts that plaintiff acted as quickly as possible in an effort to recover his cotton. Another fact not discussed by the lower court, which we are of the opinion shows negligence and lack of precaution on the part of Mr. May when he purchased the cotton, is that Lafitte, an ordinary negro plantation hand, ginned the cotton in the name of John Taylor, a negro farmer who lived in the vicinity of the gin and who was farming the place owned by his mother and on which he and his mother both resided. Lafitte also sold the cotton in the name of John Taylor, although Mr. May knew at the time that Lafitte was not John Taylor. Mr. May admits the transaction as outlined was "unusual," yet his only investigation was to inquire of the owner or operator of the gin if they thought the cotton was all right. Receiving an affirmative reply, he purchased it. He made no attempt to contact John Taylor who resided in that community and could have been contacted without a great deal of trouble.

■ Our appreciation of the law applicable under the circumstances of this case is that notice is to be distinguished from knowledge and, if the buyer has notice of facts which would put a reasonably prudent man upon inquiry of the adverse interest sought to be enforced against him, he will be held to have taken with notice and cannot assert the right of a bona fide purchaser. It is most unusual for a negro farmer to allow another negro farm hand, not a member of his family and not in his employ, to have his cotton ginned, and

unusual to the extreme to allow him to sell it. In this instance Mr. May failed to use proper diligence to learn the truth.

In Ruling Case Law, vol. 10, pp. 696, 697, the following rule is laid down: "Nor is there any estoppel when the other party had notice or knowledge of the facts, or when the matters were equally known to both parties or the means of knowledge were equally open. To have the benefit of an estoppel a person must show good faith and diligence to learn the truth. The doctrine of equitable estoppel is essentially one of 'good conscience'. Where, therefore, one with convenient opportunity to ascertain the real facts by the exercise of reasonable diligence neglects to do so, he will not be permitted to defeat another's just rights by urging an equitable estoppel based upon his having acted to his disadvantage in reliance upon that other's innocently mistaken representation regarding those facts, where such representation was not made for the purpose of inducing him so to act."

■ Lafitte contends in his answer and also testified that he had no interest in the cotton and was only employed to haul it. An inquiry of Lafitte by Mr. May might have elicited this same answer, although we, as well as the lower court, give no weight to Lafitte's testimony in this respect. It is not shown by Mr. May that he made any inquiry of Lafitte as to how he came into possession of the cotton. We are convinced that the lack of diligence on the part of Mr. May to attempt to ascertain the truth when he admits the transaction was "unusual," would be and is a bar to any relief for him under the plea of equitable estoppel, if in any instance it would prevail under the facts of this case.

■ The lower court found plaintiff to be negligent and guilty of laches which were sufficient to sustain the plea of equitable estoppel because the cotton was left by him in a convenient place for thieves. If we should adopt this view of the lower court, the average cotton farmer would be at the mercy of cotton thieves. It is common knowledge that most farmers never lock up the cotton as it is picked. In most instances it is stored in log cribs located in the field a great distance from any residence. It is often left in stacks at the end of the rows until such time as it is convenient to pick it up. It is often placed in some vacant house or piled on the front porch of some negro cabin on the place.

It is unusual when one finds cotton under lock and key. If we should hold that the plea of equitable estoppel would bar plaintiff from recovering his cotton in the hands of an innocent third person because it was left in a place easily accessible to thieves, the same rule would have to apply to one who leaves his stock in a pasture to graze at night and to anyone who leaves the doors of his residence open so thieves may easily enter and steal and sell the jewels which have been left in a convenient place for them in the house and not under lock and key. We cannot subscribe to this doctrine.

The decisions relied upon by the lower court to sustain its judgment are: Thompson v. Hibernia Bank & Trust Company, 148 La. 57, 86 So. 652; Haley et al. v. Woods et al., 163 La. 911, 113 So. 144, 146; Young v. Gretna Trust & Savings Bank, 184 La. 872, 168 So. 85, 88; Overland Texarkana Company v. Bickley, 152 La. 622, 94 So. 138, 139.

The first three cases cited are easily distinguished from the one at bar, and the fourth case is strong authority in support of plaintiff's contention. The first case deals with the transferring of negotiable instruments before maturity for a valuable consideration. The gist of the case is in the following statement of the court, 148 La. 57, on page 67, 86 So. 652, 655: "It is clear that the Hibernia Bank & Trust Company took these bills of lading in good faith, either as additional collateral or to secure pro tanto a prospective overdraft; and it is in the same position as a holder of a promissory note for value in good faith before maturity, and, as such, no layman, or seeker for equity, in any form of holder, can affect the title of the bank, which it acquired to the bills of lading."

A different rule would have applied if the bank had acquired the negotiable instruments after maturity for the reason that the purchaser of a negotiable instrument after maturity, whose rights are derived from one not the owner and who is not authorized to sell, acquires no title or right thereto or thereafter as against the true owner. Revised Civil Code, art. 2452; Bird v. Cockrem, 28 La.Ann. 70; Henderson v. Case, 31 La.Ann. 215; Davis v. Bradley, 26 La.Ann. 555; Foley v. Smith, 6 Wall. 492, 493, 18 L.Ed. 931; Stern Bros. v. Germania National Bank, 34 La.Ann. 1119; Holloway v. A. J. Ingersoll Company, 16 La.App. 494, 133 So. 819.

Past-due negotiable instruments are treated and considered as all other personal property.

In the case of Stern Bros. v. Germania National Bank, supra, the court said: "It must be admitted that the principle invoked by us, in its application to transfers, not only of past due negotiable instruments but of all personal property, by the possessors and apparent owners thereof, undoubtedly exposes innocent dealers to great danger of fraud and wrong; yet there are many equitable considerations which weigh equally in its favor; and the law, as it exists, has been established, after a full and fair consideration of the equities on both sides. Arguments against its wisdom and propriety should be addressed to the legislative, not to the judicial discretion."

It is therefore easy to see that the case of Thompson v. Hibernia Bank & Trust Company has no application to the facts in the one at bar.

In the second case cited by the lower court, viz., Haley et al. v. Woods et al., we find that, if it has any application at all to the one at bar, it favors plaintiff's contention. In that case the court said: "The defendant Woods also contends that, since he purchased the property at the partition sale in good faith, he, a stranger to the partition suit, is protected by the decree of the court ordering the sale. The principle invoked by him has no application here. We may assume that he was an innocent purchaser at the sale; still the plaintiffs were innocent of fault in the matter. Where one of two innocent persons must suffer, he who makes it possible for the injury to occur must bear the consequences. It was Woods' duty to have ascertained before purchasing that the plaintiffs herein were constructively before the court, or in other words that the court had acquired jurisdiction as to them over the property in controversy before purchasing. Were the rule otherwise, it would make it possible for one to be deprived of his property without due process of law, simply because the record on its face seemed to indicate that there was such process. It may be observed, in this connection, that Woods might have ascertained easily the true state of facts from the sheriff's office, and also, we may assume, from the curator ad hoc."

This rule supports the view we take that the purchaser of the cotton should

have made some investigation to find out the truth concerning the ownership of it.

The next case relied upon is Young v. Gretna Trust & Savings Bank. This is a suit to recover $30,052 for the alleged unlawful payment of funds on deposit in the defendant bank belonging to plaintiff on checks bearing forged indorsements. The checks which made up the amount were issued weekly, beginning April 29, 1928, up to and including March 1, 1933, for sums ranging from $2 to $20, respectively. Plaintiff had in its employ an assistant to the timekeeper by the name of Vanderbrook. His duties consisted of making up the pay rolls, also in making up part of the checks, that is, he would write the name and date on the check and send it to the cashier's office where he filled in the amounts from the pay roll. As timekeeper, Vanderbrook made up false time cards and false distribution sheets carrying on them fictitious names. Without going further into detail, he would get possession of these checks made out to the fictitious persons, indorse the fictitious names on the back, cash the checks, and pocket the money. This continued for a period of five years before being detected by plaintiff, his employer, although at least twelve of the same fictitious names were carried on the pay roll for several years. At the end of each month the bank would return the canceled checks to plaintiff and request that it inspect them and notify the bank if any errors were found. This was never done, and at no time during the five years did plaintiff check up on its timekeeper. The court sustained the plea of equitable estoppel and said: "The defendant does not question the correctness of the decisions cited by plaintiff's counsel in their voluminous brief, nor the principles therein embodied, but contends that the Celotex Company should bear the loss of the amount claimed for the reason that the proximate cause of the loss was due to its own careless and negligent manner of operating its business, in that it permitted, for a period of nearly five years, the defalcation of its trusted employee to go unnoticed when it had within its possession every available means of detecting the same, but failed to do so, and therefore, plaintiff is estopped from asserting its claim against the defendant, Gretna Trust & Savings Bank, in liquidation."

This case has no application to the facts of the one at bar.

The last case relied upon by the lower court is Overland Texarkana Company v. Bickley, supra. In this case plaintiff entered into a conditional sale with one in the state of Arkansas of an Overland touring car. He received a check for $500 and three promissory notes for the balance of the purchase price. In Arkansas, under the conditional sale, title to the car remained in the seller until the car was paid for. The purchaser drove the automobile to Zwolle, La., and traded it to defendant for two secondhand cars and some cash. Plaintiff presented the check for payment. It was worthless. He immediately began a search for the car and found it in defendant's possession. Defendant had acquired it in good faith. Plaintiff sued for the car and its possession. The Supreme Court of this state allowed recovery and in the course of its opinion said:

"When this stranger brought the automobile into this state he had no title to it; and he acquired none thereafter. Not having any, he could convey none. The sale to him not having been made in this state, was not governed by the law of this state. Civil Code, art. 10. Therefore defendant acquired no title; and therefore also said Act 193 of 1920 does not apply to this case.

"Nor is the rule, that where one of two innocent persons must suffer loss by reason of the fraud of a third person, the loss should fall upon him by whose act or omission the wrongdoer has been enabled to commit the fraud, apply to the case. Defendant relied upon what the stranger told him, and upon the fact that the stranger had possession of the car and appeared to be owner. If the stranger had told him the truth, he would not have been in good faith in purchasing from him. For any lies of this stranger plaintiff is not responsible. The only thing plaintiff is responsible for is for the stranger's having had possession. But the letting a person have possession of a movable is not enough for estopping an owner from recovering his property from a third person who has purchased it in good faith from the possessor. If it were, a lessor or lender could not recover from a person who had bought in good faith from the lessee or borrower; and no one would pretend such a thing. In order that said rule should apply, the owner must have clothed the defrauder with some indicium of ownership besides mere possession. 24 R.C.L., 663, p. 376.

"The rule enunciated in article 10, C.C., supra, which has its foundation in mere comity, will not be applied where to do so would displace rights derived from the laws of the state of the forum. Tyree & Co. v. Sands & Co., 24 La.Ann. [363] 364. But, in the present case, no rights derived by defendant from the laws of this state are displaced. The reason why defendant has no rights is that his vendor had none and could convey none, and that he has not acquired any from any other source."

It is needless to say that this case does not support the decision of the lower court.

Defendants' counsel have cited three other cases in support of their contention, Forsyth v. Martin, 3 La.Ann. 514; Summerlin v. Livingston, 15 La.Ann. 519; Getman v. Harrison, 112 La. 435, 36 So. 486.

We have carefully read these cases and are certain they are not in point and have no application to the facts of the case at bar. A discussion of each of these would be a waste of time.

Article 2452 of the Revised Civil Code, "The sale of a thing belonging to another person is null; it may give rise to damages, when the buyer knew not that the thing belonged to another person," is the law applicable to this case.

In the case of Holloway v. Ingersoll Company, supra, which is much stronger for the defendants than the one at bar, we allowed recovery of the value of four bales of cotton purchased by defendant from one who was not the owner, but was lawfully in possession of same. In that case we reviewed the jurisprudence of the state to some extent and will not now quote further from it.

We are convinced the plea of equitable estoppel has no application to the case at bar and that plaintiff is entitled to recover the two bales of cotton stolen from him and now in the possession of the American Compress & Warehouse Company, of Shreveport, La.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court is reversed, and there is now judgment for plaintiff and against the defendants, decreeing the plaintiff, John W. Lynn, to be the owner of the two bales of cotton bearing gin Nos. 2342 and 2522, and now stored with the American Compress & Warehouse Company, of Shreveport, La., said company having issued to T. S. Mc-Davitt, of Hope, Ark., warehouse receipts Nos. 194285 and 197628 for said cotton.

It is further ordered and decreed that said cotton be delivered to plaintiff and that the writ of sequestration sued out herein be sustained; all costs of both courts to be paid by defendants.