The plaintiff, a homestead association, instituted this suit against the defendants to annul and cancel a purported act of sale of real estate by itself to the purchaser, dated November 26, 1941, on the ground that its president was without authority, express or implied, to sell the property. It also alleged that it did not receive the purchase price or any benefit from the sale and prayed for an accounting and a monied judgment against the defendants for rent at the rate of $43 per month from November 26, 1941.
The defendant, Kerner, denied the allegations of the plaintiff's petition. He *Page 515 
pleaded apparent and ostensible authority of the president to bind the corporation and to receive the purchase price of the sale. He also pleaded estoppel and laches.
There was judgment in favor of the plaintiff and the defendant, Kerner, appealed.
The homestead owned the property, 1718-1718 1/2 Burdette Street, New Orleans, La. At intervals and for a period of more than a year, the property was advertised for sale in the daily newspaper by a real estate agent, who was duly elected by the Board of Directors of the association, to negotiate the sale of real property belonging to it, and who was also a member of its Board of Directors. On November 12, 1941, Leon Jacobs, acting through his real estate agent, Marks Jeffers, entered into a contract to purchase the property through the homestead's agent for the sum of $3,500 it being stipulated in the agreement that the act of sale was to be passed before the homestead's notary. A deposit was made to bind the contract. Jacobs then contacted George H. Kerner, the defendant, and offered to sell the property to him for $3,800, which amount Kerner agreed to pay, after an inspection of it. Jacobs then called at the office of the homestead and explained to its president, his transaction with Kerner, and requested that the sale be made direct from the homestead to Kerner, and the president of the association agreed to do so. About two weeks later, Jacobs and Kerner were notified that the papers were ready. They appeared at the office of the association and the act of sale, whereby the homestead was selling the property to *Page 516 
Kerner for the sum of $3,500, was read to them. The president of the homestead and Kerner signed the sale, and two ladies in the office affixed their signatures thereto, as witnesses. This sale, authentic in form, recited that the president was duly authorized by the Board of Directors through a resolution, a certified copy of which was annexed to and made a part thereof. Jacobs intervened in the act of sale and assigned and relinquished his interest in favor of Kerner in the original agreement to purchase. Kerner handed to the president a blank check and told him to fill out the same for the amount due. The president made the check payable to himself, as "Notary Public", for the sum of $3,854.61, dating it November 26, 1941. The check was paid by the bank, in due course, out of the purchaser's funds. The president gave his check for $300 to Jacobs, representing his profit on the transaction. The $54.61 included in the check represented the cost of certificates, the survey, the examination of title and the passing and registering of the act of sale. Approximately two weeks later, Kerner received from the duly appointed notary of the homestead and a member of its Board of Directors, a certified copy of the act of sale wherein it was stated that the president was duly authorized to appear by virtue of a resolution of the Board of Directors, which resolution was annexed to and made a part thereof, and that the sale had been duly registered in the Conveyance Office of the Parish of Orleans in Book 518, Folio 632, on December 6, 1941. The purchaser made about $600 of improvements upon the property and collected rents therefrom and managed *Page 517 
it. The plaintiff's president failed to account for the $3,500 due it. On March 11, 1943, or a year and three and one-half months after the sale, this suit was instituted.
The plaintiff's own evidence makes it doubtful whether the Board of Directors did not pass a resolution authorizing the president to sign, but assuming, without deciding the issue, that such a resolution was not adopted, a view most favorable to the plaintiff, we shall consider the pleas of apparent authority, estoppel, and laches.
The evidence shows that the Board of Directors of the homestead authorized its real estate agent and member of its Board to advertise the property for sale and that its members were familiar with the fact that its agent submitted the offers he received to the president for his acceptance, rejection, or counter-offer. These officers also knew that their agent had advertised this property for sale for a period of more than a year. Upon receiving Jacob's offer, the plaintiff's real estate agent submitted it in writing to the president, in triplicate. The president accepted the offer and retained one of the copies of the document. The notary of the homestead (before whom the contract of sale provided the sale was to be passed) was the duly appointed notary for the homestead, as well as a member of the Board of Directors thereof. One of the homestead's attorneys who examined the title and secured the certificates attached to the act of sale was also a member of the Board of Directors. The act of sale was completed on November 26, 1941, and registered in the Conveyance Office *Page 518 
on December 6, 1941, thereby constituting constructive public notice. It also appears that the homestead subscribed to the Daily Court Record wherein acts of sale were reported for the convenience of those who subscribed to this service. The duly elected notary, a member of the Board of Directors, and former secretary of the plaintiff association, testified that he frequently received certified copies of the resolutions authorizing sales of real estate by the homestead weeks after the passage of the acts of sale. The present secretary, who was formerly a bookkeeper of the plaintiff, testified that the president conducted the homestead's affairs. The minutes of the Board of Directors show that the president was named as its executive officer and had authority to take charge and custody of the funds and securities of the association. It also appears that regular audits were made of the assets of the corporation and a report thereof given to the Board of Directors and the State Banking Department.
The record unmistakably shows that the defendant, Kerner, in no way induced the homestead to sell its property or in any manner influenced its officers as to the manner of preparing and executing the act of sale, but left the entire matter in their hands, in accordance with the plaintiff's authorized advertisement for the sale thereof. It is indisputable that the $3,500 due the homestead was placed by Kerner in the hands of its president, who, under the Board of Directors' resolution previously adopted, had authority as its executive officer to receive its funds. There is not the *Page 519 
slightest suggestion that Kerner knew that the president of the homestead failed to deposit the money to the credit of the homestead or account for it and used the subterfuge of reporting $43 per month rent as received from the property subsequent to the sale, in attempting to conceal the misapplication of the funds.
In Ruling Case Law, Volume 7, at page 642, it is stated: "So it has been held that the general managing agent of a manufacturing company has no power to convey the corporate real estate. Still the power of a corporate officer or agent to contract for the sale of the corporate lands need not necessarily be conferred by a formal resolution of the board of directors but may, as in case of other power, be inferred from the conduct of the corporation in the transaction of its business, and the power which the corporation has customarily permitted the officer or agent to exercise."
In American Jurisprudence, Volume 13, Section 890, we find the following: "Apparent or ostensible Authority; Authority by Estoppel. It is a fundamental and wellsettled rule that when, in the usual course of the business of a corporation, an officer or other agent is held out by the corporation or has been permitted to act for it or manage its affairs in such a way as to justify third persons who deal with him in inferring or assuming that he is doing an act or making a contract within the scope of his authority, the corporation is bound thereby, even though such officer or agent has not the actual authority from the corporation to do such an act or make such a contract. This authority is known as apparent *Page 520 
or ostensible authority. This apparent authority is materially the same and is based upon the same principles as authority by estoppel. Stating the rule in terms of estoppel, a corporation which, by its voluntary act, places an officer or agent in such a position or situation that persons of ordinary prudence, conversant with business usages and the nature of the particular business, are justified in assuming that he has authority to perform the act in question and deal with him upon that assumption is estopped as against such persons from denying the officer's or agent's authority."
In 19 C.J.S., Corporations, § 996, page 458, it is stated: "Although an officer or agent acts without, or in excess of, his actual authority, if he acts within the scope of an apparent authority, with which the corporation has clothed him by holding him out or permitting him to appear, as having such authority, the corporation is bound thereby in favor of a person who deals with him in good faith in reliance on such apparent authority, * * *." See, also, Slagle et al. v. Peyton, 182 La. 358,162 So. 12; Berlin v. P. L. Cusachs, Ltd., 114 La. 744, 38 So. 539; Ware v. Barataria Lafourche Canal Co., 15 La. 169, 35 Am.Dec. 189.
In Young et al. v. Gretna Trust Savings Bank, 184 La. 872,168 So. 85, 90, the Court stated: "A well-established rule of equity is applicable here, i. e., that `where one of two innocent parties must suffer loss through the fraud of another, the burden of the loss should be imposed on him who most contributed to it.' Thompson v. Hibernia *Page 521 
Bank Trust Co., 148 La. 57, 58, 86 So. 652. See, also, Haley v. Woods et al., 163 La. 911, 113 So. 144; Brooks-Scanlon Co. v. Illinois Central Railroad Co., 5 Cir., 257 F. 235; Boatsman v. Stockman's National Bank, 56 Colo. 495, 138 P. 764, 50 L.R.A., N.S., 107; Crippen, Lawrence Co. v. American National Bank, 51 Mo.App. 508; Stout v. Benoist, 39 Mo. 277, 281, 90 Am.Dec. 466."
It is our opinion that the manner in which the homestead's affairs were conducted justified the defendant, Kerner, who acted in good faith, in assuming, as a reasonable person, that the president and directors of the corporation, who had participated in the transaction, had the ostensible and apparent authority to represent it in the advertisement, and sale of the property and receipt of the purchase price.
The plaintiff relies upon the case of Bright v. Metairie Cemetery Ass'n, 33 La. Ann. 58, where the president employed special counsel without authority of the Board of Directors. There was no evidence to show that the Board of Directors had permitted the president to operate the corporation for it; there was no plea of estoppel and it did not appear that the directors had knowledge of the fact that the employment had been made by the president.
Snell v. Amite Oil Co., 178 La. 176, 151 So. 70, is not in point, because it involves the provisions of Act 148 of 1910 governing applications for executory process.
The case of Interstate Trust Banking Co. v. Powell Bros. 
Sanders Co. et al., *Page 522 126 La. 22, 52 So. 179, is not applicable, because the question there was whether or not the mortgage which had been executed by the corporation was an authentic act when there was not authentic evidence to show that the resolution of the Board of Directors attached to the mortgage was executed by the Board.
The case of Slidell Savings Homestead Association v. Fidelity Deposit Co., 178 La. 548, 152 So. 121, is not controlling here, because two of the directors of the corporation, who were free to speak, being in no way involved in the defalcation, had actual knowledge of the sale and there were facts and circumstances such as advertising the property for sale, the public recordation of the sale, authority to receive its funds, etc., to impute knowledge to the other directors that the property had been sold.
For the reasons assigned, it is ordered that the judgment of the district court is annulled and set aside; and
It is now ordered, adjudged and decreed that there be judgment herein in favor of the defendant, George H. Kerner, and against the plaintiff, Ideal Savings and Homestead Association, confirming the defendant's title to the following described property, to-wit: "A certain lot or portion of ground, together with all the buildings and improvements thereon and all the rights, ways, privileges, servitudes and appurtenances thereunto belonging or in any wise appertaining, situated in the Seventh District of this City in Square No. 222, bounded by Burdette, Hickory, Fern and Green Streets, designated as Lot No. 23 *Page 523 
on a plan of said square made by D. E. Seghers Sons, Surveyors, dated January 29, 1906, and according to which said sketch said lot measures thirty feet, six inches more or less front on Burdette Street by a depth between equal and parallel lines of one hundred and fifty feet. Said lot begins at a distance of one hundred and twenty feet from the corner of Green and Burdette Streets. The improvements on said property bear the Municipal Nos. 1718-1718 1/2 Burdette Street.
It is further ordered that the plaintiff's suit be dismissed at its costs.