159 So.2d 408 (1963)
HUMBLE OIL & REFINING COMPANY, Plaintiff-Appellant,
v.
Miss H. M. WATERS, a.k.a. Hattie Mae Waters, Defendant-Appellee.
No. 10062.
Court of Appeal of Louisiana, Second Circuit.
December 6, 1963.
Coen & Pliner, Shreveport, for appellant.
Robert W. Coyle, Shreveport, for appellee.
Before HARDY, GLADNEY, and AYRES, JJ.
AYRES, Judge.
This is an action upon an open account in the sum of $2,896.48 for merchandise allegedly sold and delivered to defendant, *409 or for her account, on a credit card issued to her by plaintiff's predecessor, Esso Standard Oil Company. The merchandise consisted primarily of motor oils, gasoline, tires, and tubes. Of the amount claimed, defendant admitted owing $276.76, but she denied owing the balance of the account for the reason that she neither purchased nor authorized the purchase of the merchandise represented thereby. From a judgment in favor of plaintiff for the amount admittedly due, plaintiff appealed.
The questions involved on this appeal are primarily factual in character. A brief review of the facts appears appropriate for an understanding of the issues presented for determination. Beginning with April 8, 1955, plaintiff's predecessor, Esso Standard Oil Company, issued to defendant credit cards annually, each expiring on December 31st of the year for which it was issued. This practice continued through December 31, 1960. The cards were renewed at the end of each year and forwarded to those whose accounts were satisfactory without the necessity of a request therefor. Through the use of these cards, defendant procured credit from retail dealers handling Esso products. The accounts thus made up of credit sales were transferred and assigned to plaintiff or its predecessor.
During the fall of 1959, defendant permitted one Don Claud Romby, a roomer at her residence, to use her credit card in making certain purchases. On the presentation of defendant's credit card, Romby signed defendant's name to the purchase order acknowledging delivery of the merchandise. On receipt of a renewal card for 1960, defendant refused to deliver this card to Romby or to authorize him to make purchases on her account.
Pursuant to a telephone call by someone to B. J. Campbell, Jr., of the Credit Department of plaintiff's predecessor, giving notice that the renewal card supposedly issued to defendant had not been received, a second card was requested which was accordingly issued and mailed to her at her street address in Shreveport. Defendant had no notice or knowledge of the aforesaid call or of the issuance of the second card. She never received it. Obviously, it was extracted from her mailbox. Neither did she receive statements for the months of November and December, 1959, or for January, February, and March, 1960. However, during the last of April or first of May, 1960, she received a statement for an amount exceeding $2,000.00. Obviously, Romby had extracted these statements from defendant's mailbox in order to conceal his purchases on defendant's account.
On a second occasion, a call was made to the Credit Department of plaintiff's predecessor in which the predecessor was informed that the account would soon be made current. Its delinquency was attempted to be accounted for by statement to the effect that rains had prevented the use of heavy machinery from bringing timber out of the woods.
Plaintiff's representative, on receiving the aforesaid calls, did not recognize defendant as the one calling. On the contrary, the voice appeared not to be that of a woman. Defendant was a woman schoolteacher and not a logger, a fact known by plaintiff's precedessor's representative, as well as shown by its records.
From the facts and circumstances shown to have existed, it can only be concluded that Romby made the calls and that he received and used the additional card issued in defendant's name; that his possession and use of this card was without the knowledge or consent of the defendant.
Finally, while Romby was attempting to use the card, it was taken from him by a local retailer and returned to plaintiff.
From the foregoing recitation of facts, the conclusion is that a relationship of principal and agent existed between defendant and Romby during the latter part of 1959. The delivery of the credit card by her to Romby constituted an authorization *410 to charge to her account purchases made by him through the use of the credit card.
The relationship of principal and agent created by the delivery of a credit card by one to the other was discussed in Neiman-Marcus Company v. Viser, La.App.2d Cir., 1962, 140 So.2d 762 (writs denied). Reference was made to the effect of such a relationship wherein we stated:
"Our conception of the law is that, when one clothes another with apparent authority to act for him, insofar as a third party is concerned, he will not be permitted to deny that fact; that is, where a person, by his acts or conduct, has knowingly caused or permitted another to appear as his agent to the injury of third persons, who have dealt with the apparent agent in good faith and in the exercise of reasonable prudence, he will be estopped to deny the agency. * * * The principal is, therefore, bound by the engagements contracted by his agent or mandatary conformably to the power confined to him (LSA-C.C. Art. 3021)." (140 So.2d 762, 765).
However, the Neiman-Marcus case is readily distinguishable from the instant case. In the instant case, defendant refused Romby the use of her credit card for 1960. In the instant case, Romby fraudulently obtained possession of a credit card issued in defendant's name.
The record is void of any showing of fault on the part of defendant. The issuance of the second credit card on an anonymous telephone call, without in some manner checking on the identity of the person making the call, constituted, at least, carelessness and, in all probability, negligence. For this, defendant is not responsible.
The factual situation of this case is governed by the well-established principle of law that, when one of two innocent parties must suffer loss through the fraud of another, the burden of such loss should rest upon the one who contributed most to it. Flatte v. Nichols Motor Co., 233 La. 171, 96 So.2d 477; Clark-Kelley Livestock Auction Co. v. Pioneer Bank & T. Co., 228 La. 224, 81 So.2d 869; Thompson v. Hibernia Bank & Trust Co., 148 La. 57, 86 So. 652. Stated differently, the principle is that, where one of two innocent parties must suffer because of the actions of a third party, the one whose negligence or conduct occasioned the loss must bear it. Haley v. Woods, 163 La. 911, 113 So. 144.
In accordance with these principles and under the facts established, as aforesaid, the conclusion is inescapable that plaintiff must bear the loss.
Therefore, for the reasons assigned, the judgment appealed is affirmed at plaintiff-appellant's cost.
Affirmed.